UNITED STATES of America, Plaintiff–Appellee,

v.

Blue GACNIK, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Steven Carroll GADE, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Antonio Estevan SANDOVAL, Defendant–Appellant

Nos. 94–1126, 94–1135 and 94–1140.

United States Court of Appeals, Tenth Circuit.

March 13, 1995.

---

Philip W. Ogden, Colorado Springs, CO, for defendant-appellant Blue Gacnik (submitted on the briefs).

Donald G. Paulson, Paulson & Paulson, Colorado Springs, CO, for defendant-appellant Steven Carroll Gade.

Janine Yunker, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, CO, for defendant-appellant Antonio Estevan Sandoval (submitted on the briefs).

Gregory C. Graf, Asst. U.S. Atty., Denver, CO (Henry L. Solano, U.S. Atty., with him on the brief), for plaintiff-appellee.

Before KELLY and HENRY, Circuit Judges, and BURCIAGA, District Judge.†

PAUL KELLY, Jr., Circuit Judge.

Defendants-appellants Blue Gacnik, Steven Carroll Gade, and Antonio Estevan Sandoval appeal the district court's application of the Sentencing Guidelines after each, in accordance with Fed.R.Crim.P. 11(a)(2), entered a plea to conspiracy to manufacture explosive materials without a license, 18 U.S.C. § 371. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm Messrs. Gade's and Sandoval's sentences, but remand Ms. Gacnik's case for resentencing.

### Background

In May 1993, Mr. Gade acquired a copy of a book entitled "The Anarchist's Cookbook," which details, inter alia, how to manufacture explosives. Among the many inviting recipes contained therein appeared one for aluminum

---

† The Honorable Juan G. Burciaga, Senior United States District Judge for the District of New Mexico, sitting by designation. After these appeals were submitted, Judge Burciaga passed away. Judge Burciaga did not participate in this opinion. In this regard, see 28 U.S.C. § 46(d).

flash powder, a highly explosive material considerably more dangerous and volatile than either dynamite or plastic explosives. Necessary ingredients were ordered, and sizable batches of highly explosive aluminum flash powder were mixed and packaged for distribution. Messrs. Gade and Sandoval then sold devices containing the explosives at parties, and included juveniles among their satisfied customers.

On June 26, 1993, Pueblo police responded to a call reporting that Mr. Gade had fired shots outside his apartment during an altercation with members of a group known as "Skinheads Against Racial Prejudice" (SHARPS). Ms. Gacnik, who was dating Mr. Gade at the time, called the police. When the police arrived, they took Mr. Gade into custody. Upon returning to the station, officers received an anonymous phone call informing them that Mr. Gade was manufacturing explosive devices. With Mr. Gade's consent, the police returned to the apartment, accompanied by him, to search for explosives.

Between the time that Mr. Gade was taken into custody and the police returned to search, Mr. Sandoval and Ms. Gacnik gathered up the explosive materials in the apartment and hid them in the basement of the building behind the stairs. At the time of their actions, the two were aware only of the police investigation into the shooting incident, and not of any investigation in connection with the manufacture of the explosives. Not surprisingly, upon their arrival at Mr. Gade's, the police initially failed to find any explosive materials. When Ms. Gacnik was questioned regarding the whereabouts of these materials, she denied any knowledge, until prompted by Mr. Gade to admit their location.

Police ultimately recovered 2.2 pounds of aluminum flash powder stored in a jar, 60 explosive devices containing a total of 1.7 pounds of flash powder, and two pipe bombs from the basement.

On appeal, the Defendants challenge the sentences meted out to them as a result of these activities.

## Discussion

### A. Obstruction of Justice

Ms. Gacnik contends that the district court erred in assessing her a two-level upward sentence adjustment for obstruction of justice pursuant to U.S.S.G. § 3C1.1 (Nov. 1994). This Sentencing Guideline provision mandates a two-level offense increase "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense." She raises two legal arguments. First, she contends that § 3C1.1 should not be read to encompass conduct that is itself part of the crime. Next, Ms. Gacnik argues that this Guideline adjustment should not apply to obstructive conduct occurring prior to the commencement of an official investigation into the ultimate offense of conviction.

In support of her first argument, Ms. Gacnik contends that her concealment of the explosive materials was an element of the conspiracy to manufacture these materials without a license, the crime of which she was convicted. She raises this challenge for the first time on appeal. Her failure to raise this matter below severely limits the scope of our review. "Normally, failure to alert the trial court to an error precludes review of that same issue by this court." *United States v. Frederick,* 897 F.2d 490, 494 (10th Cir.), *cert. denied,* 498 U.S. 863, 111 S.Ct. 171, 112 L.Ed.2d 135 (1990). However, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *United States v. Saucedo,* 950 F.2d 1508, 1511 (10th Cir.1991) (quoting Fed.R.Crim.P. 52(b)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1343, 122 L.Ed.2d 725 (1993). Therefore, unless the district court's findings in this regard constitute plain error, we may not consider the merits of Ms. Gacnik's claim. *Id.*

The plain-error exception is not a tool to be routinely employed, but rather "is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady,* 456

U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)). To invoke this exception, the district court's error must be "'particularly egregious,'" *id.* (quoting *Frady*, 456 U.S. at 163, 102 S.Ct. at 1592) as well as "'obvious and substantial.'" *Saucedo*, 950 F.2d at 1511 (quoting *United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir.), *cert. denied*, 502 U.S. 884, 112 S.Ct. 239, 116 L.Ed.2d 194 (1991)).

■ We find that no such error was committed in regard to Ms. Gacnik's first legal challenge. Her claim that an act of concealment is an element of the crime of conspiracy to manufacture explosive materials without a license is incorrect. For purposes of 18 U.S.C. § 371, the crime of conspiracy consists of (1) an agreement; (2) to break the law; (3) accompanied by an overt act; (4) furthering the conspiracy's object; (5) and that the defendant willfully entered the conspiracy. *United States v. Hanson*, 41 F.3d 580, 582 (10th Cir.1994). This crime does not encompass any *element* of fraud, deceit, or concealment. While the act of concealment may be taken as evidence of a conspiracy, it is not by itself an element of the crime as defined under the law. Moreover, the act of concealment is not incorporated in U.S.S.G. § 2K1.3, the guideline provision applied to the offense to which Ms. Gacnik pleaded, and so there is no danger of punishing her twice for the same conduct. *See United States v. Flinn*, 18 F.3d 826, 829 (10th Cir.1994) ("impermissible cumulative sentencing occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions ...").

Ms. Gacnik did raise her second legal argument with the district court, that the reach of § 3C1.1 does not include obstructive conduct occurring prior to the commencement of an official investigation into the offense of conviction. Given that, resolution of this question mandates an examination of the district court's interpretation and application of the Sentencing Guidelines; our review is de novo. *See United States v. Hershberger*, 962 F.2d 1548, 1550 (10th Cir.1992).

■ We find Ms. Gacnik's argument persuasive. A plain reading of U.S.S.G. § 3C1.1

compels the conclusion that this provision should be read only to cover willful conduct that obstructs or attempts to obstruct "*the* investigation ... of *the* instant offense." (emphasis added).

The Sentencing Guidelines are to be interpreted as if they were a statute, meaning that we must follow the "clear, unambiguous language if there is no manifestation of contrary intent[,]" *United States v. Goldbaum*, 879 F.2d 811, 813 (10th Cir.1989) (citing *Mistretta v. United States*, 488 U.S. 361, 391, 109 S.Ct. 647, 664–65, 102 L.Ed.2d 714 (1989)), "giving the words used their ordinary meaning." *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (internal citation and quotations omitted). To our mind, the clear language of § 3C1.1 enunciates a nexus requirement that must be met to warrant an adjustment. This requirement is that the obstructive conduct, which must relate to the offense of conviction, must be undertaken during the investigation, prosecution, or sentencing. Obstructive conduct undertaken prior to an investigation, prosecution, or sentencing; prior to any indication of an impending investigation, prosecution, or sentencing; or as regards a completely unrelated offense, does not fulfill this nexus requirement. *See United States v. Levy*, 992 F.2d 1081, 1083 (10th Cir.1993) (finding nexus requirement between obstructive conduct and offense of conviction).

In so holding, we must respectfully disagree with the Eighth Circuit, which has read § 3C1.1 in broader terms regarding the precise issue before us. In *United States v. Dortch*, 923 F.2d 629 (8th Cir.1991), the Eighth Circuit reasoned quite properly that the offense of conviction may not be what initially attracts police attention, but then, in our opinion, wrongly assumed that this truism had been incorporated into § 3C1.1, such that a defendant obstructing justice with knowledge of an investigation wholly unrelated to the offense of conviction could be found deserving of an adjustment. 923 F.2d at 632. In our view, this reasoning contradicts the plain language of the provision, which speaks only of adjustment for obstruction of "*the* investigation ... of *the* instant offense." U.S.S.G. § 3C1.1 (empha-

sis added). Although we reject this reasoning in *Dortch,* we continue to agree with its alternative holding (not at issue here) that "[t]he conduct relied upon to support an obstruction of justice enhancement must relate to the crime of conviction." *See Levy,* 992 F.2d at 1084 (citing *Dortch,* 923 F.2d at 632).

Another case relied upon by the government, *United States v. Barry,* 938 F.2d 1327 (D.C.Cir.1991), is not contrary to our ruling. In that case, a defendant, obviously aware of an investigation, lied to a grand jury investigating the very crimes for which he was ultimately convicted. *Id.* at 1332. The D.C. Circuit correctly noted that "the significant factor is not the mere timing of the obstruction but rather whether the defendant attempted to obstruct the administration of justice *with respect to* the investigation ... of the offense of conviction." *Id.* at 1334 (emphasis in original).

Under our reading of § 3C1.1, we find that the government failed to establish this nexus. There is simply no evidence that Ms. Gacnik undertook to hide the explosive materials with any knowledge of an impending investigation or during any investigation of the conspiracy for which she was ultimately convicted. We disagree with the district court that the very act of concealment, standing alone, is sufficient evidence of Ms. Gacnik's awareness of an investigation pointed at her offense of conviction. The record reveals only that Ms. Gacnik was aware that the police had taken Mr. Gade into custody for having discharged a gun, but this knowledge of police interest in a completely unrelated offense, not involving her, simply does not meet the requirements of § 3C1.1. We therefore reverse the district court's finding that an obstruction of justice adjustment was proper in Ms. Gacnik's case, and remand for resentencing. *See* 18 U.S.C. § 3742(f).

## B. Acceptance of Responsibility

Ms. Gacnik and Mr. Gade contend that the district court erred by refusing to award either of them a two-level downward adjustment for acceptance of responsibility pursuant to § 3E1.1 of the Sentencing Guidelines. This section provides in relevant part, "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a). Whether a defendant has accepted responsibility for purposes of § 3E1.1, is a factual question that we review under a clearly erroneous standard. *United States v. McCollom,* 12 F.3d 968, 972 (10th Cir.1993). We recognize that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n.5).

■ The district court did not commit clear error in ruling that Ms. Gacnik had failed to accept responsibility for her criminal conduct. The record supports this conclusion. Ms. Gacnik attempted to minimize her role in the conspiracy in the face of evidence to the contrary about her involvement in the manufacture of the explosive devices and her knowledge of the sales of these devices to third parties. Additionally, the district court found that Ms. Gacnik's denial of knowledge of the dangerousness of the explosive devices lacked credibility.

■ Neither does Mr. Gade's behavior warrant a downward adjustment for acceptance of responsibility. A defendant who enters a guilty plea is not entitled to a downward adjustment for acceptance of responsibility as a matter of right. U.S.S.G. § 3E1.1, comment. (n.3). Rather, the defendant bears the burden to prove his acceptance of responsibility. *McCollom,* 12 F.3d at 972. It is clear, as the district court found, that Mr. Gade did not meet this burden. Mr. Gade was far from truthful in admitting conduct comprising the offense. Moreover, he did not voluntarily terminate his criminal conduct; indeed, after his arrest, Mr. Gade sought to revive his business by ordering additional materials for the manufacture of explosives.

■ Mr. Gade argues that § 3E1.1 should be liberally construed to take into account a defendant's subjective characteristics, such as his age, experience, and physical and mental abilities. This contention is akin to the argument for individualized sentencing re-

jected by the Supreme Court in *Mistretta v. United States,* 488 U.S. 361, 395, 109 S.Ct. 647, 667, 102 L.Ed.2d 714 (1989). As the Court recognized, the Sentencing Guidelines replaced the entirely individuated determinations of the past with a standardized evaluation and weighing that could then be applied to individual cases. *Id.* To do as Mr. Gade asks would be to undermine this entire scheme.

## C. Upward Departure Under U.S.S.G. § 2K1.3

All three defendants challenge the upward departures assessed pursuant to U.S.S.G. § 2K1.3, comment. (n.10). The Tenth Circuit has enunciated a three-step analysis for review of upward departures: (1) a de novo review of whether the circumstances cited by the district court warrant departure; (2) a clearly erroneous review of the factual determinations supporting the decision to depart; and (3) a reasonableness review of the degree of departure. *Flinn,* 18 F.3d at 828.

> Application Note 10 of § 2K1.3 provides:
>
> An upward departure may be warranted in any of the following circumstances: (1) the quantity of explosive materials significantly exceeded 1000 pounds; (2) the explosive materials were of a nature more volatile or dangerous than dynamite or conventional powder explosives (*e.g.,* plastic explosives); (3) the defendant knowingly distributed explosive materials to a person under twenty-one years of age; or (4) the offense posed a substantial risk of death or bodily injury to multiple individuals.

At sentencing, the district court deemed two of these factors to be present with respect to all three Defendants: the explosive materials were more volatile than dynamite, and the offense posed a substantial risk of death or injury to multiple individuals. Additionally, the court found that Messrs. Gade and Sandoval had knowingly distributed the explosive materials to persons under the age of twenty-one. As a result of these findings, the court imposed a two-level upward departure on Ms. Gacnik, while Messrs. Gade and Sandoval received three-level upward departures.

The district court relied upon appropriate circumstances warranting a departure. It followed the specific criteria listed in U.S.S.G. § 2K1.3, comment. (n.10). As the Supreme Court has noted, Sentencing Guideline Commentary is to be given controlling weight, so long as it is neither plainly erroneous nor inconsistent with the Guidelines themselves. *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993).

■ Messrs. Gade and Sandoval, however, question whether the four factors listed under Application Note 10 may be cumulated to award multiple departure increases, or whether these factors are alternative criteria, the presence of one or more of which allows the awarding of only one departure increase. This is a question of first impression. Our reading of the Sentencing Guidelines indicates that Application Note 10 provides for the awarding of cumulative departure increases when more than one of the listed factors are present.

In addressing "general application principles," the Sentencing Guidelines note that the "commentary may suggest *circumstances* which, in the view of the Commission, may warrant departure from the guidelines." U.S.S.G. § 1B1.7 (emphasis added). We think that each of the four factors listed in Application Note 10 constitutes a separate circumstance. Each of the four factors may be present by itself or in combination with the other three; they are independent variables, and as such, ought to be considered independently in awarding an adjustment under § 2K1.3.

As the next step in our analysis, we find that the district court did not commit any error, much less clear error, in its factual determinations underlying its decisions to depart. The unrebutted testimony of Agent Thomasson of the Bureau of Alcohol, Tobacco, and Firearms establishes that the explosive materials manufactured by the Defendants were more volatile than dynamite or conventional powder explosives.

■ Ms. Gacnik, however, urges that such a finding is not enough to warrant departure under Application Note 10, and contends that

a defendant must have knowledge of the materials' volatility during the course of the conspiracy. We disagree.

Application Note 10 is silent regarding the existence of a mens rea requirement for this volatility/dangerousness factor; however, when the drafters of the Guidelines have wished to impose a mens rea requirement, they have been explicit in doing so. *See United States v. Sanders,* 990 F.2d 582, 584 (10th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 216, 126 L.Ed.2d 172 (1993); *United States v. Singleton,* 946 F.2d 23, 25 (5th Cir.1991), *cert. denied,* 502 U.S. 1117, 112 S.Ct. 1231, 117 L.Ed.2d 465 (1992); *United States v. Taylor,* 937 F.2d 676, 682 (D.C.Cir. 1991). That the drafters can and do deem bad intent necessary for certain crimes is illustrated by the inclusion of a scienter requirement in the very next factor listed under Application Note 10, *"knowingly* distribut[ing] explosive materials to a person under twenty-one years of age." *See Singleton,* 946 F.2d at 25 (emphasis in original).

 We may readily dispose of the remaining challenges to the district court's factual determinations pertaining to upward departure under § 2K1.3. Mr. Sandoval argues that insufficient evidence was presented to implicate him in the knowing distribution to persons under twenty-one. Agent Thomasson, however, testified that he interviewed juveniles to whom Messrs. Gade and Sandoval had attempted to sell the explosive devices. Ms. Gacnik and Mr. Gade object to the finding that their offense posed a substantial risk of death or bodily injury to multiple individuals. The record supports the opposite conclusion.

 The last step in examining an upward departure requires a reasonableness review of the degree of the departure. We do not lightly overturn determinations of the appropriate departure degree. *United States v. Williams,* 922 F.2d 578, 582 (10th Cir.1990), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 733 (1991). Only Mr. Sandoval has appealed on this last factor. Certainly these departures increased Mr. Sandoval's sentence, but this three-level increase was well within the range of reasonableness given the seriousness of the conduct

and the potential for harm. *See Flinn,* 18 F.3d at 828–29 (six-level adjustment deemed reasonable).

### D. Criminally Negligent Homicide as a Crime of Violence

Lastly, Mr. Sandoval contends that the district court erred in finding that conduct underlying a predicate conviction for criminally negligent homicide presented a serious risk of physical injury to others, and assigning him a base offense level of twenty as one who had been convicted for a "crime of violence." Because resolution of this issue demands that we examine the district court's interpretation and application of the Sentencing Guidelines, our review is de novo. *See Hershberger,* 962 F.2d at 1550.

U.S.S.G. § 2K1.3(a)(2) provides that a district court must assign a base offense level of twenty "if the defendant had one prior felony conviction of either a crime of violence or a controlled substance offense...." Application Note 2 to § 2K1.3 refers to § 4B1.2 for the definition of "crime of violence." This section defines the term as follows:

> (1) The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(1) (emphasis added).

 Mr. Sandoval argues that in determining the applicability of § 4B1.2(1)(ii), the district court should have limited its inquiry into the conduct set forth in the predicate count of conviction. If the lower court had so limited its analysis, Mr. Sandoval contends, it would have had to conclude that the criminally negligent homicide at issue did not constitute a "crime of violence." We disagree with this argument. Rather, we find that the district court correctly looked to the statutory count of conviction, the indictment, and specific, unchallenged facts set forth in

the presentence report to conclude that Mr. Sandoval indeed had committed a "crime of violence" for purposes of § 4B1.2(1)(ii).

Under Colorado law, "criminally negligent homicide" occurs when "[a]ny person ... causes the death of another person by conduct amounting to criminal negligence...." Colo.Rev.Stat. § 18–3–105 (1986). "A person acts with criminal negligence when, through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists." Colo.Rev.Stat. § 18–1–501. Read together, these statutes clearly delineate "conduct that presents a serious potential risk of physical injury to another," thus placing criminally negligent homicide squarely within the ambit of a "crime of violence" under § 4B1.2(1)(ii).

■ To label any and all conduct resulting in a charge of criminally negligent homicide as a "crime of violence," however, may sweep too broadly. Because it encompasses such a wide range of behaviors, Colorado's criminally negligent homicide statute is ambiguous. Thus, a court " 'can look beyond the statutory count of conviction in order to resolve a patent ambiguity caused by a broad state statute.' " *United States v. Garcia*, 42 F.3d 573, 576 (10th Cir.1994) (quoting *United States v. Smith*, 10 F.3d 724, 733 (10th Cir. 1993) (per curiam)). The range of this extra-statutory examination is, however, limited to the charging papers, judgment of conviction, plea agreement or other statement by the defendant for the record, presentence report adopted by the court, and findings by the sentencing judge. *Smith*, 10 F.3d at 734. Relying upon information contained in his prior indictment, Mr. Sandoval's presentence report reveals that he pleaded guilty to criminally negligent homicide in connection with the fatal child abuse of his two infant children. To our mind, it is beyond cavil to argue that child abuse is not conduct presenting a "serious potential risk of physical injury to another." Mr. Sandoval clearly has committed a "crime of violence" under § 4B1.2(1)(ii).

The judgments are AFFIRMED as to Messrs. Gade and Sandoval. The judgment against Ms. Gacnik is REMANDED for re-sentencing.