PUBLISH

**F I L E D**
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**NOV 28 1997**

**PATRICK FISHER**
Clerk

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GARY NORMAN, also known as
Stitch,

Defendant - Appellant.

Nos. 96-1342 & 96-1359

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 94-CR-350-S)**

---

Susan L. Foreman, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, Colorado, for Appellant.

Guy Till, Assistant United States Attorney (Henry L. Solano, United States Attorney and Gregory C. Graf, Assistant United States Attorney, on the briefs), Denver, Colorado, for Appellee.

---

Before **ANDERSON**, **HENRY**, and **BRISCOE**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Following a jury trial, Gary L. Norman was convicted on one count of possessing methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On appeal,[1] Norman contends that the district court erred by: 1) refusing to dismiss the felon in possession count; 2) imposing a two-level sentence enhancement for obstruction of justice; 3) assessing an additional criminal history point for a previous minor misdemeanor conviction; 4) assessing two additional criminal history points for an outstanding deferred judgment and sentence; and 5) failing to deduct drug amounts which he possessed for personal use from its drug quantity calculation. We affirm in part, reverse in part, and remand for resentencing.

**BACKGROUND**

In the early evening of October 16, 1994, Norman caused a traffic accident when he failed to stop at a stop sign, and the 1976 Cadillac he was driving[2] struck a pick-up truck. R. Vol. II, Tab 43, Ex. 1 at 8. The truck spun around from the force of the impact and, sliding sideways 174 feet, came to rest facing the

---

[1]Norman filed two notices of appeal. Each was assigned a case number, and the two have been consolidated.

[2]Norman did not own the car, and he had no car insurance. R. Vol. XIII at 65; R. Vol. II, Tab 43, Ex. 1 at 2.

guardrail. The Cadillac continued about ninety-four feet, knocking over an interstate sign before it stopped on a grassy median.[3] Id.; R. Vol. X at 127. Two of the truck occupants were slightly injured and required medical attention. R. Vol. X at 121. When a witness at the scene approached Norman, he was "behaving strangely." Id. at 120. Other witnesses described Norman as "spaced out," "acting weird," "agitated," and "uncooperative." Id. at 127-28, 133. The witnesses observed Norman get out of his car, walk in front of it, kick up some dirt, and drop something over which he again kicked dirt, apparently attempting to bury the item(s). They also observed Norman put something in his car's trunk. Id. at 127, 135.

Deputy Erik Little was dispatched to the accident scene because of a report that someone there had a handgun. R. Vol. XI at 187. When Little arrived, he saw Norman standing in front of the Cadillac, kicking the dirt. Id. One of the witnesses informed him that Norman had put a gun inside the car. Id. at 188. As he approached Norman, Little saw a hunting knife on his belt. Little told Norman that the knife needed to be secured for officer safety, and he asked if Norman was carrying any other weapons. Id. at 188-89. Norman answered, "No," although he stated that he had a handgun under the front seat of the Cadillac. Id. at 189-90.

_____

[3]The record does not indicate whether either vehicle could be driven following the accident.

Little conducted a pat down search during which he located a loaded two-shot derringer in Norman's left front pants pocket. At that time, Little handcuffed Norman and continued the pat down which further uncovered a small vial containing what appeared to be methamphetamine and $295 in cash in Norman's right pants pocket. Id. at 189. Little then arrested Norman.

Meanwhile, Trooper Miranda had arrived at the scene. After securing Norman in the back seat of Little's patrol car, Miranda and Little checked inside the Cadillac, where they found a loaded Taurus .357 revolver and a magazine for a .22 semiautomatic weapon. Id. at 190-91, 341-42. In the trunk, they found a loaded .380 semi-automatic handgun and several two-inch zip lock baggies. Id. at 200-02, 342-43. When the officers and one of the witnesses checked the area in front of Norman's car where they had observed him, they discovered a partially buried black box containing a scale and a baggie containing methamphetamine. Id. at 191-92; R. Vol. X at 136-39.

Suspecting that Norman was under the influence of a drug, Miranda called Trooper Beard, a drug-recognition expert, to the scene. R. Vol. XI at 344-45; R. Vol. X at 149-50. In Beard's opinion, Norman was under the influence of a stimulant, although he appeared to be "coming down." R. Vol. X at 154, 156-58. The formal write-up which the police prepared upon return to the station indicates that Norman was arrested for various violations, including disregarding a stop

sign, driving without insurance, driving while under the influence, unlawfully carrying a concealed weapon, possession of a controlled substance, and possession of a firearm while under the influence. R. Vol. II, Tab 43, Ex. 1 at 1-2. Colorado Springs police subsequently executed a search warrant at Norman's shop/home, where they found some destructive devices as well as paraphernalia associated with methamphetamine consumption. R. Vol. XII at 372, 414-16, 422-25, 428, 430-31.

Eventually, the United States obtained a five-count superseding indictment against Norman. R. Vol. I, Tab 31. The jury convicted Norman on counts one (drug distribution) and three (felon in possession of a firearm). However, the jury acquitted him on count two–carrying a firearm (the small gun found in his pocket) in connection with a drug crime; on count four–possessing a firearm (the semiautomatic found in his trunk) while he was a user of illegal drugs; and on count five–possessing a destructive device (found during the search of his shop). On July 11, 1995, after reviewing the PSR and hearing objections, testimony and arguments, the district court calculated Norman's base offense level and criminal history category, and then sentenced him to 151 months' imprisonment on the drug distribution conviction and to a concurrent 120 months' imprisonment on the firearms conviction.

## DISCUSSION

A. <u>Unlawful Possession of a Firearm by a Previously Convicted Felon</u>.

In 1976 Norman pleaded guilty and was convicted and sentenced on a Colorado state felony charge of conspiracy to dispense drugs. He was subsequently released from prison in September 1978, and he was discharged from parole in July 1979. R. Vol. XVIII at ¶¶ 55-60.

Title 18 U.S.C. § 922(g)(1) prohibits the possession of a firearm by any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." The prior convictions which will support a § 922(g)(1) charge are described and restricted by 18 U.S.C. § 921(a)(20) as follows:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction . . . for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, <u>unless such</u> . . . <u>restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.</u>

18 U.S.C. § 921(a)(20) (emphasis added).

In this case, the government supported its § 922(g)(1) charge against Norman by alleging his 1976 Colorado state felony conviction. As his first claim on appeal, Norman contends that his prior Colorado conviction cannot serve as a predicate offense under 18 U.S.C. § 921(a)(20), and that the district court erred

-6-

by refusing to dismiss that count. We review a district court's interpretation of 18 U.S.C. § 921(a)(20) de novo. United States v. Hall, 20 F.3d 1066, 1068 (10th Cir. 1994).

In 1979, at the time Norman completed his sentence, his civil rights were restored by operation of Colorado law, and, also at that time, Colorado imposed no restriction on his right to possess firearms. We have previously held that 18 U.S.C. § 922(g)(1) does not reach such convictions. Hall, 20 F.3d at 1069. However, Colorado amended its laws in 1993, and under the law in effect at the time that Norman was arrested in October 1994, it was a crime for any convicted felon to possess a firearm. Colo. Rev. Stat. § 18-12-108.[4] Therefore, we must determine whether § 921(a)(20) requires us to apply the Colorado law which was in effect at the time Norman completed his sentence, and his civil rights were originally restored, or whether the section requires us to apply the amended law which was in effect at the time that he was arrested.[5]

---

[4]We note that the Colorado statute, as amended, is presumptively prospective. See Colo. Rev. Stat. § 2-4-202 ("A statute is presumed to be prospective in its operation."). However, inasmuch as we base our holding upon the express mandate of 18 U.S.C. § 921(a)(20), see discussion infra, we need not address whether the particular state law amendment purports to apply prospectively or retrospectively. See United States v. Haynes, 961 F.2d 50, 52-53 (4th Cir. 1992).

[5]We have previously addressed this precise question in an unpublished opinion which was issued after the district court ruled in this case. United States v. Fowler, No. 95-1207, 1996 WL 734637 (10th Cir. Dec. 23, 1996) (holding that § 921(a)(20) applies the law as viewed at the time defendant's civil rights were restored). Although Fowler is
(continued...)

-7-

As the Ninth Circuit explained in United States v. Cardwell, 967 F.2d 1349

(9th Cir. 1992):

> Section 921(a)(20) states that section 922(g)(1) applies if the pardon,
> expungement, or restoration of civil rights "expressly provides" that
> the defendant may not ship, transport, possess, or receive firearms.
> The plain meaning of this use of the present tense is that the courts
> must determine the effect of the pardon, expungement, or restoration
> of civil rights at the time it is granted and cannot consider whether
> the defendant's civil rights later were limited or expanded.

Id. at 1350-51 (emphasis added) (citation omitted); accord United States v.

Haynes, 961 F.2d 50, 52-53 (4th Cir. 1992); United States v. Traxel, 914 F.2d

119, 124-25 (8th Cir.1990).

We agree with our sister circuits. Section 921(a)(20) requires us to look to

the law which was in effect at the time that Norman's civil rights were restored,

and then to determine whether that law "expressly provides" that he may not ship,

transport, possess, or receive firearms.[6] As noted, Colorado law did not expressly

---

[5](...continued)
not binding, we are persuaded by its reasoning and the authority it cites. See discussion
infra.

[6]In its reply brief, the government conceded the weight of authority against it on
this issue. However, on the eve of oral argument, the government filed three cases of
supplemental authority, and contended in argument that this lately uncovered authority
supports the district court's ruling. We disagree. Of the three cases, only Melvin v.
United States, 78 F.3d 327 (7th Cir.), cert. denied, 117 S. Ct. 384 (1996), considers an
instance in which state law was amended to permanently forbid a felon's possession of a
firearm. However, citing controlling Seventh Circuit authority, Melvin notes that the
defendant's civil rights were never "restored" within the meaning of § 921(a)(20). Id. at

(continued...)

limit Norman's possession of firearms at the time his civil rights were restored. Therefore, notwithstanding any later limitation which may have been imposed, his 1976 conviction could not serve as a predicate offense under § 922(g)(1), and the district court erred in refusing to dismiss. Accordingly, we reverse Norman's conviction on this count.

B. Sentencing Calculations under United States Sentencing Commission, Guidelines Manual (Nov. 1995).

Overruling timely objections, the district court increased Norman's offense level by two levels for obstruction of justice, and it added one criminal history point for a municipal ordinance harassment conviction. Additionally, with no objections raised, the district court added two criminal history points because Norman committed the instant offense while he was under another criminal justice sentence, and in calculating the quantity of methamphetamine involved,

---

[6](...continued)
329. Moreover, our analysis would reach a similar result, since at the time that some of Melvin's civil rights were originally reinstated, Illinois law prohibited him from possessing a firearm for five years. See id. The remaining two supplemental authorities are even more readily distinguished. In United States v. Moore, 108 F.3d 878 (8th Cir. 1997), the Eighth Circuit noted that Tennessee law requires a convicted felon to take affirmative steps to have his civil rights restored, which steps the defendant apparently had failed to take. Id. at 881 n. 4. Therefore, the defendant's prior convictions counted as violent felonies under § 924(e)(2)(B)(i), (ii), and it was irrelevant that he could otherwise possess a weapon. Id. Finally, the third case, United States v. Julian, No. 4:CR-97-0078, 1997 WL 467301 (M.D. Pa. Aug. 13, 1997), involves a defendant whose state conviction was expunged almost a year after he purchased a firearm in violation of § 922(g)(1).

the district court did not exclude any amounts which Norman may have possessed for personal use. If objections are timely raised, we review a district court's factual findings for clear error, and we review its legal interpretation of the guidelines de novo. See United States v. Pappert, 112 F.3d 1073, 1078 (10th Cir. 1997); United States v. Gacnik, 50 F.3d 848, 852 (10th Cir. 1995). If no objections were made below, we review for plain error. Fed. R. Crim. P. 52(b); United States v. Farnsworth, 92 F.3d 1001, 1007-08 (10th Cir.), cert. denied, 117 S. Ct. 596 (1996). However, it is well settled that a sentence based on the wrong guideline range constitutes an error "affecting substantial rights" of the defendant. Farnsworth, 92 F.3d at 1008.

### 1. Increase for Obstruction of Justice – USSG § 3C1.1

The PSR recommended that no enhancement for obstruction of justice was warranted. Nonetheless, the district court found that Norman's attempted concealment of drugs and guns at the accident scene constituted an obstruction of justice pursuant to USSG § 3C1.1.[7] Norman contends that this finding was erroneous for two reasons: 1) there is no nexus between his concealment of drugs and guns and the investigation of the car accident; and 2) his conduct was

---

[7]The government argues that the district court's remark that some of Norman's trial testimony was "less than credible" is independently sufficient to warrant the obstruction enhancement. Appellee's Br. at 20-22. We disagree. See United States v. Yost, 24 F.3d 99, 106 (10th Cir. 1994).

contemporaneous with his arrest, and, therefore specifically excluded under the commentary to § 3C1.1.

Section 3C1.1 requires a two-level increase in the base offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the <u>instant offense</u>." USSG § 3C1.1 (emphasis added). Commentary application note 3 sets forth examples of the types of conduct which warrant the section's enhancement. Specifically, note 3(d) applies the enhancement for:

> destroying or concealing . . . evidence that is material to an official investigation or judicial proceeding (<u>e.g.</u>, shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so; <u>however, if such conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction</u> . . . .

USSG § 3C1.1, comment. (n.3(d)) (emphasis added).[8] Thus, the attempt to conceal evidence constitutes obstruction of justice under circumstances which are limited, first, by the clear language of § 3C1.1, and, then, by the express exclusion noted in the commentary.

---

[8]As a further qualification, application note 3(d) also provides that conduct which occurred contemporaneously with arrest will warrant an adjustment if "it resulted in a material hindrance to the official investigation or prosecution of the instant offense . . . ." USSG § 3C1.1, comment. (n.3(d)). However, in this case, it is undisputed that Norman's conduct did not materially hinder the investigation.

a. Instant Offense

As a threshold limitation, § 3C1.1 requires a nexus between the allegedly obstructive conduct and the "instant offense." Gacnik, 50 F.3d at 852. That is, "the obstructive conduct, which must relate to the offense of conviction, must be undertaken during the investigation . . . ." Id. "Obstructive conduct undertaken prior to an investigation, . . . prior to any indication of an impending investigation, . . . or as regards a completely unrelated offense, does not fulfill this nexus requirement." Id.

Accordingly, in this case, we do not consider either the felon in possession of a firearm conviction, which we now reverse, or the two drug-related gun counts on which Norman was acquitted, and any attempt to conceal firearms is irrelevant. On the other hand, Norman's attempt to conceal methamphetamine is relevant to the drug distribution conviction. Therefore, we must inquire whether there is an appropriate nexus between this concealment and his awareness of any investigation that was underway or impending.

Norman contends that his actions fail to satisfy the nexus requirement as delineated in Gacnik, since the only investigation he anticipated was an unrelated investigation of the car accident.[9] We disagree. In Gacnik we found it critical

---

[9]The government asserts that there was, in fact, an ongoing investigation concerning Norman's possible involvement in a drug ring. However, the government

(continued...)

-12-

that the defendant knew only about an unrelated investigation not involving her. Gacnik, 50 F.3d at 853. By contrast, a car accident investigation involves inquiries into causation, including whether either driver was under the influence. Moreover, such investigations routinely involve assessment of the cars' locations and conditions, and any contraband and drug paraphernalia in plain view may be seized.[10] Finally, at the very least, when the driver neither owns the car nor possesses proof of insurance, he may reasonably anticipate that he and the car may be detained while police contact the owner, and that an inventory of the car's contents may be taken. Thus, we conclude that Norman was aware of an impending investigation, the scope of which necessarily entailed questions about, and the likely discovery of, controlled substances, so that his actions in attempting to conceal the methamphetamine were sufficiently related to the offense for which he was ultimately convicted.

---

[9](...continued)
cites no evidence that Norman was aware any such investigation. Therefore, only the pending investigation of the car accident is pertinent to our analysis. See United States v. Lister, 53 F.3d 66, 69 (5th Cir. 1995) (holding that the term "willfully" requires that the misconduct occur with knowledge of an investigation, or at least the correct belief that an investigation is probably proceeding); United States v. Oppedahl, 998 F.2d 584, 586 (8th Cir. 1993) (same); United States v. Perry, 991 F.2d 304, 312 (6th Cir. 1993) (noting defendant had no knowledge of any investigation when he acted); cf. United States v. Gacnik, 50 F.3d 848, 852 (10th Cir. 1995) (finding knowledge of unrelated investigation insufficient under § 3C1.1).

[10]Norman testified that the methamphetamine and scales had been in a bag in the front seat area of the car. R. Vol. XIII at 13-14.

b. <u>Exclusion for Concealment Contemporaneous with Arrest</u>

Having found a sufficient nexus, we must address Norman's claim that his actions do not warrant an enhancement because they were contemporaneous with his arrest. Although Norman made this argument below, the district court did not consider the contention when it found that Norman's actions constituted obstruction.

In the context of application note 3(d), contemporaneous "has been construed to encompass obstructive conduct just prior to arrest, as when the police are at the defendant's door." <u>Hankins</u>, No. 96-5207, ___ F.3d ___, 1997 WL 631318, at *4 (10th Cir. Oct. 14, 1997) (citing <u>United States v. Perry</u>, 991 F.2d 304, 312 (6th Cir. 1993)). Thus, a defendant's action in hiding evidence as customs agents knocked on the hatch of his boat has been found to be contemporaneous with arrest, even though the defendant was not actually arrested for some time while the agents checked out his story. <u>See</u> <u>United States v. Savard</u>, 964 F.2d 1075, 1076, 1078-79 (11th Cir. 1992). Similarly, the Fifth Circuit applied a contemporaneous-with-arrest analysis to a defendant who, suspecting that police were approaching in unmarked cars, ran away from an undercover agent and returned to a house where he removed evidence from his coat and gave it to a codefendant. <u>United States v. Bethley</u>, 973 F.2d 396, 402

-14-

(5th Cir. 1992) (approving obstruction enhancement based on combination of factors).

In this case, we have already determined that Norman knew that the police would be arriving immediately. In fact, Norman was still "kicking at the dirt" in front of his car when the first officer did arrive, R. Vol. XI at 187, and he actually was arrested within moments of that arrival. Clearly, Norman understood that his failure to stop caused the accident, and that he would be questioned and detained as soon as the police arrived. Under the circumstances, his attempt to conceal the methamphetamine which had been on the front seat of his car involved a "reflexive response occurring at the point arrest becomes imminent." See United States v. Lamere, 980 F.2d 506, 515 n.6 (8th Cir. 1992). Therefore, Norman's actions were contemporaneous with his arrest within the purview of application note 3(d). Accordingly, we conclude that the district court erred in finding that an obstruction of justice enhancement was warranted.

2. Criminal History Assessments

The sentencing guidelines provide that a defendant's criminal history shall be calculated based on the number and type of his previous sentences. See USSG § 4A1.1. Norman contends that the district court erred by counting previous sentences which the guidelines either expressly exclude or simply do not include.

a.  <u>Assessment for Misdemeanor Municipal Ordinance Offense of Harassment</u>

Norman asserts that his previous conviction under the Colorado Springs, Colorado, Municipal Code for the offense of harassment should not have been counted in his criminal history.  In support, he points to USSG § 4A1.2(c)(1) which excepts misdemeanor convictions if the sentences fall below specified thresholds, and if they involve offenses "by whatever name they are known" which are similar to certain enumerated offenses, including "[d]isorderly conduct or disturbing the peace."  USSG § 4A1.2(c)(1).  Essentially, he contends that the harassment offense should have been excepted because it is similar to disorderly conduct or disturbing the peace.  Norman seeks to buttress this argument by suggesting that our prior decision in <u>United States v. Cox</u> appears to find Colorado's general code classifications conclusive.  <u>United States v. Cox</u>, 934 F.2d 1114, 1124 (10th Cir. 1991) (noting that, under Colorado law, the defendant's offense is a crime against the person, whereas disorderly conduct is a crime against the public peace).  By analogy, Norman argues that <u>Cox</u> supports exclusion in his case because the Colorado Springs, Colo., Municipal Code locates the harassment offense in its section entitled "Offenses Affecting Public Safety."[11]

---

[11]The offense is presently codified in the Colorado Springs, Colo., Municipal
(continued...)

We disagree. The code classifications we recited in <u>Cox</u> were merely shorthand for the obvious textual reading of the respective statutes. Moreover, were <u>Cox</u> given the narrow interpretation Norman urges, general classification headings would trump text with absurd results.[12] In this case, the ordinance to which Norman pleaded guilty provides that "[a] person commits harassment if, with intent to harass, annoy or alarm another person, he . . . [s]trikes, shoves, kicks, or otherwise touches a person . . . ." Colorado Springs, Colo., Municipal Code § 21-2-108. In fact, the record indicates that Norman pleaded guilty to an offense which actually did involve pushing another person. R. Vol. XVIII at ¶ 65. Accordingly, we conclude that the harassment conviction involved an offense against persons which is not similar to any excepted offense under § 4A1.2(c)(1).

> b. <u>Assessment for Committing the Instant Offense While Under a Criminal Justice Sentence</u>

On March 30, 1994, Norman pleaded guilty to a state charge of carrying a concealed weapon. On June 30, 1994, the court granted him a one-year deferred judgment and sentence with special conditions pursuant to Colo. Rev. Stat.

---

[11](...continued)
Code, at Chapter 21, Article 2.

[12]For example, the Colorado Springs Municipal Code also includes assault in its public safety section. <u>See</u> Colorado Springs, Colorado, Municipal Code § 21-2-110.

§ 16-7-403.[13]  According to the PSR, the conditions of deferral required Norman to forfeit all his weapons, to attend a weapons safety course, and to complete twenty-four hours community service.  R. Vol. XVIII at ¶ 69.  Before the one year deferral period expired, on October 16, 1994, Norman was arrested for the instant offense.

Guideline § 4A1.1(d) provides for the addition of two points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  Id. (emphasis added).  As explained in the application

_____

[13]Colo. Rev. Stat. § 16-7-403 provides in relevant part:

(1) In any case in which the defendant has entered a plea of guilty, the court accepting the plea has the power . . . to continue the case for a period not to exceed . . . two years from the date of entry of a plea to a misdemeanor . . . for the purpose of entering judgment and sentence upon such plea of guilty . . . .  During such time, the court may place the defendant under the supervision of the probation department.

(2) Prior to entry of a plea of guilty to be followed by deferred judgment and sentence, the district attorney, in the course of plea discussion . . . is authorized to enter into a written stipulation, to be signed by the defendant, the defendant's attorney of record, and the district attorney, under which the defendant is obligated to adhere to such stipulation.  The conditions imposed in the stipulation shall be similar in all respects to conditions permitted as part of probation. . . .  Such stipulation shall specifically provide that, upon a breach by the defendant of any condition regulating the conduct of the defendant, the court shall enter judgment and impose sentence upon such guilty plea.

Id. (emphasis added).

notes, "[f]or purposes of this item, a 'criminal justice sentence' means a sentence countable under §4A1.2 (Definitions and Instructions for Computing Criminal History) having a custodial or supervisory component, although active supervision is not required for this item to apply." USSG § 4A1.1, comment. (n.4). Under § 4A1.2(a)(3), "[a] conviction for which the imposition or execution of sentence was totally suspended or stayed shall be counted as a prior sentence under §4A1.1(c)."[14]

For the first time on appeal, Norman contends that the district court erred in concluding that his deferred sentence warranted the assessment of two criminal history points pursuant to USSG § 4A1.1(d). We have previously found that a deferred sentence which imposes probation constitutes a criminal justice sentence within the meaning of § 4A1.1(d). United States v. Vela, 992 F.2d 1116, 1117 (10th Cir. 1993) (applying Oklahoma law which required that the defendant be placed on probation during the period of deferment). Nonetheless, Norman contends that our decision in Vela should not control our resolution of his claim, since he was not placed on probation. We disagree.

---

[14]Under Colorado law, a person who has entered a guilty plea and receives a deferred sentence is considered convicted, at least until the deferral period is successfully completed. Colo. Rev. Stat. §§ 16-7-206, 16-7-403(2); see Hafelfinger v. District Court, 674 P.2d 375, 377, 377 n. 3 (Colo. 1984).

Under Colorado's deferred sentencing statute, "when conditions are imposed on a defendant's deferred judgment, those conditions are to be 'probation-like.'" People v. Method, 900 P.2d 1282, 1285 (Colo. Ct. App. 1994) (interpreting Colo. Rev. Stat. § 16-7-403(2)). Additionally, Colorado requires that any stipulation which contains conditions for deferring sentence shall provide that judgment will be entered and a sentence imposed if the conditions are breached. Colo. Rev. Stat. § 16-7-403(2). Accordingly, Vela controls since "[b]y the very terms of the statute, the proceedings contemplate deferral and probation." Vela, 992 F.2d at 1117. As in Vela, based on the state statute, as well as the actual imposition of "probation-like" conditions, and a broad reading of § 4A1.1(d), we conclude that, in this case, the district court properly added points.[15] See Vela, 992 F.2d at 1117-18.

### 3. Calculation of Drug Quantity

For the first time on appeal, Norman contends that the district court erred when it calculated drug quantities without deducting amounts which he possessed for personal use. We reject this claim outright. The district court adopted the drug quantity which Norman himself urged. R. Vol. XVIII, Defendant's Objections to PSR at 4; R. Vol. XVIII, PSR at 13 n.2; R. Vol. XVII at 26-27.

---

[15]We note that the Ninth Circuit reached a different result in United States v. Kipp, 10 F.3d 1463 (9th Cir. 1993). However, there is no indication that any conditions were actually imposed on the granting of the deferred judgment in that case.

Additionally, at trial Norman testified that the methamphetamine belonged to someone else, and he also testified that he had only used methamphetamine a few times. R. Vol. XIII at 14-15, 75.

Finally, Norman has filed two pro se motions related to drug calculations. Essentially, he argues that we should remand so that the district court can recalculate drug quantities based on gross, rather than actual amounts. Although Norman briefly made a similar argument at the sentencing hearing, that argument related to whether or not other relevant conduct should be included. As we noted above, Norman's filings with the court urged the quantities which the court actually adopted. Accordingly, we find no merit to Norman's motions, and we DENY them.

## CONCLUSION

For the reasons stated, we REVERSE Norman's conviction under 18 U.S.C. § 922(g)(1). With regard to sentencing, we AFFIRM the district court's assessment of criminal history points and its calculation of drug quantities, and we REVERSE its enhancement for obstruction of justice. Accordingly, we VACATE Norman's sentence, and REMAND for resentencing not inconsistent with this opinion.