**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FEB 5 1999**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

GARY L. NORMAN, a.k.a.
"STITCH,"

      Defendant-Appellant.

No. 97-1313
(D.C. No. 95-CR-137-S)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BALDOCK**, and **EBEL**, Circuit Judges.

Defendant-Appellant Gary L. Norman appeals his September 1997 sentencing on federal drug charges. He argues that the district court erred in deriving his base offense level from the amount of actual (pure) methamphetamine found in his possession instead of the total weight of the methamphetamine mixture. Norman also argues that the court erred in calculating

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the drug quantity by failing to deduct amounts of methamphetamine he possessed for personal use (as opposed to distribution).

Norman's first argument fails under the clear language of the Sentencing Guidelines. His second argument fails because, even excluding amounts of methamphetamine reasonably held for personal use, his base offense level would not have differed. We affirm.

## BACKGROUND

On August 11, 1995, Norman entered a plea of guilty to possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii), and possession of a firearm while under felony indictment, in violation of 18 U.S.C. § 922(n). These charges stemmed from an arrest in January 1995, in which Norman had been pulled over for erratic driving. His vehicle contained weapons and ammunition, a plastic baggie with 0.49g of methamphetamine mixture, and a sparkplug box containing an additional 25.3g of methamphetamine mixture, for a total of 25.79g.

The felony indictment underlying Norman's firearms count related to a similar traffic incident in October 1994, in which Norman was found with weapons and a total of 10.1g of methamphetamine mixture.[1]

--------------------

[1]In the October 1994 incident, the police found in Norman's pocket a vial containing 0.3g of methamphetamine, as well as a baggie near the vehicle

(continued...)

Norman's presentence report listed his relevant conduct as including both the 25.79g of methamphetamine seized in the January 1995 arrest, and the 10.1g of methamphetamine recovered during the October 1994 traffic incident.  The combined 35.89g of methamphetamine mixture yielded 19.95g of actual methamphetamine.[2]

The district court derived Norman's base offense level for the drug offense from the 19.95g of actual methamphetamine, giving him a base offense level of 26.  Norman received a two-level enhancement for the firearms offense and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 25.  Given Norman's criminal history category of II, the Guidelines yielded a sentencing range of 63-78 months on the possession with intent to distribute charge.  The district court sentenced Norman to 63 months on the drug charge and 60 months on the weapons charge, to run concurrently with the sentence imposed in his related case (stemming from the October 1994 incident).

---

[1](...continued)
containing 9.8g of methamphetamine, for a total of 10.1g. Norman was ultimately convicted by a jury on both the drugs and gun charges in this earlier case, which came before this court on appeal.  See United States v. Norman, 129 F.3d 1393 (10th Cir. 1997) (affirming district court's calculation of drug quantity and criminal history points, but reversing district court's enhancement for obstruction of justice).

[2]The weight of the pure methamphetamine contained in a mixture or substance is referred to in the Sentencing Guidelines as "methamphetamine (actual)."  U.S.S.G. § 2D1.1, note (B) to the Drug Quantity Table.

Norman argues on appeal that the district court should have established his base offense level using the 35.89g quantity of methamphetamine mixture (for a base offense level of 18), rather than the 19.95g of actual methamphetamine (which resulted in a base offense level of 26). Norman also submits that the court should have deducted from its drug quantity calculation any methamphetamine he possessed solely for personal use.

## DISCUSSION

Because the objections were timely raised in this case, we review the district court's factual findings for clear error and review its legal interpretation of the Sentencing Guidelines de novo. See United States v. Norman, 129 F.3d 1393, 1398 (10th Cir. 1997).

A. Calculation of the Drug Quantity Based on the Weight of the Actual Methamphetamine

Section 841(b) of Title 21 establishes penalties for possession with intent to distribute methamphetamine based either on the weight of "a mixture or substance containing a detectable amount of methamphetamine" or on lower weights of pure methamphetamine. See 21 U.S.C. §§ 841(b)(1)(A)(viii), (b)(1)(B)(viii); Chapman v. United States, 500 U.S. 453, 459 (1991) (noting distinction). The Sentencing Guidelines reflect this statutory penalty scheme. For example, under U.S.S.G. § 2D1.1(c) (Drug Quantity Table), a defendant will receive a base offense level of 26 for possessing either 100 - 400g of methamphetamine (mixture), or 10 - 40g of

methamphetamine (actual).  Similarly, a defendant will receive a base offense

level of 18 for possession of either 20 - 40g of methamphetamine mixture, or 2 -

4g of methamphetamine (actual).  In this case, the 19.95g of actual

methamphetamine in this case fell within the 10 - 40g range established for

offense level 26; by comparison, the 35.89g representing the total weight of the

methamphetamine mixture would have fallen within the 20 - 40g range prescribed

for offense level 18.

Norman contends that the court erred by using the 19.95g of actual

methamphetamine in calculating his base offense level, and that under Chapman,

the court should have instead used the total weight of the methamphetamine

mixture, or 35.89g. See Chapman, 500 U.S. at 461 (holding that weight of blotter

paper on which LSD was distributed was "mixture or substance containing a

detectable amount" of LSD, and was therefore properly considered in calculating

sentence).  Norman submits that to permit the government to select the weight

that results in a higher sentence violates the rule of lenity established in

Huddleston v. United States, 415 U.S. 814, 831 (1974).

Norman's argument overlooks the plain command of U.S.S.G. § 2D1.1(c),

note *:

> In the case of a mixture or substance containing . . .
> methamphetamine, use the offense level determined by the entire
> weight of the mixture . . . or the offense level determined by the
> weight of the . . . methamphetamine (actual), whichever is greater.

U.S.S.G. § 2D1.1(c), note * (emphasis added).

This language directs the district court to use whichever drug quantity calculation results in the higher offense level. See United States v. Decker, 55 F.3d 1509, 1513 (10th Cir. 1995); see also United States v. Newton, 31 F.3d 611, 614 (8th Cir. 1994) (relying on § 2D1.1(c), note * to reject argument that sentencing court erred in relying on actual weight of methamphetamine rather than total weight of mixture). The district court therefore properly established appellant's base offense level based on the weight of the actual methamphetamine.

Moreover, the rule of lenity argued by appellant is not applicable unless there is a "'grievous ambiguity or uncertainty in the language and structure of the Act.'" Chapman, 500 U.S. at 463 (quoting Huddleston at 831). Because there is no such ambiguity in 21 U.S.C. § 841(b) or U.S.S.G. § 2D1.1(c), note *, see Decker, 55 F.3d at 1513, appellant's argument fails.

B. Deductions for personal use

Norman contends that the district court should have omitted from its drug quantity calculation any methamphetamine Norman possessed solely for his personal use. Norman relies on United States v. Kipp, 10 F.3d 1463 (9th Cir. 1993), in which the Ninth Circuit reversed and remanded a defendant's sentence on possession with intent charges, instructing the district court to make factual

findings as to the quantity of drugs possessed for distribution and to deduct from that quantity any amounts possessed strictly for personal consumption.  Id. at 1465-66.  Norman does not identify a specific quantity of methamphetamine held for personal use; nevertheless, he urges this Court to follow Kipp and remand the case for specific findings regarding the amounts possessed for personal use and to instruct the district court to deduct such amounts from the total drug quantity.

The Tenth Circuit has neither adopted Kipp nor expressly ruled on this particular issue.[3]  However, even assuming that we were to follow Kipp in this case, it would not alter Norman's base offense level determination.

As discussed above, the district court properly relied on the weight of the actual methamphetamine to establish Norman's base offense level.  The relevant 19.95g  falls within a 10 - 40g range established at Level 26; obviously, as little as 10 g of actual methamphetamine would trigger an offense level of 26. With this

---

[3]We note that the Seventh Circuit recently relied on Kipp to hold that drugs purchased for personal consumption (vs. resale) may not be considered as "uncharged drug-related misconduct" to enhance a defendant's sentence on charges of possession with intent to distribute. See United States v. Wyss, 147 F.3d 631, 632-33 (7th Cir. 1998).   On the other hand, the Eleventh Circuit has expressly rejected Kipp, albeit in a case involving conspiracy rather than possession. See United States v. Antonietti, 86 F.3d 206, 209-10 (11th Cir. 1996). Several circuits, including ours, have ruled that drugs held for personal consumption do qualify as relevant conduct for sentencing purposes when a defendant is convicted of manufacturing or conspiring to distribute drugs.  See United States v. Snook, 60 F.3d 394, 396 (7th Cir. 1995); United States v. Wood, 57 F.3d 913, 920 (10th Cir. 1995); United States v. Innamorati, 996 F.2d 456, 492 (1st Cir. 1993).

in mind, Norman's efforts to decrease his offense level for the drug charge are unavailing. This case is factually distinguishable from Kipp; Kipp involved a plea agreement that expressly reserved the defendant's right to argue the amount of the drugs for sentencing purposes. See Kipp, 10 F.3d at 1464. No such reservation appears in July 31, 1995 plea agreement in the record before us. Indeed, Norman expressly agreed to plead guilty to possession with intent to distribute a mixture containing 16.5g of actual methamphetamine -- an amount that exceeds the 10g minimum sufficient to trigger offense level 26.[4]

In any event, the district court would have no reason to find on remand that Norman possessed less than 10g of actual methamphetamine for distribution. The only support for Norman's claim that he personally used methamphetamine is counsel's own representations at sentencing that Norman is a "heavy user;" that the probation reports indicate he used methamphetamine; and that the court ordered that he participate in drug treatment. The strongest evidence that Norman set aside some of the methamphetamine for personal use is that during the January

---

[4]The plea agreement provides that Norman agreed to plead guilty to "possession with intent to distribute a quantity of a mixture and substance containing a detectable amount of d-Methamphetamine HCL (with a net weight of approximately 16.5 grams d-Methamphetamine HCL (actual)." (July 31, 1995 Plea Agreement at 2.)

The approximately 16.5g of actual methamphetamine referred to was derived from the 25.79g of methamphetamine mixture seized in the January 1995 incident, and does not include the 10.1g of methamphetamine mixture (3+g of actual methamphetamine) recovered in the separate October 1994 traffic incident.

1995 arrest police seized a baggie containing 0.49g of methamphetamine separate from the 25.3g stash found in a sparkplug box in his vehicle. Likewise, during the October 1994 arrest, Norman had a vial in his pocket containing 0.3g of methamphetamine separate from the 9.8g quantity discovered near his car.[5] Even assuming both amounts (0.49g and 0.3g) to be 100% pure methamphetamine, and deducting both from the 19.95g total, the sum remaining still greatly exceeds the 10g minimum for offense level 26.

Thus, even if we were to agree with appellant that amounts held for personal use should be deducted from the drug quantity calculation, Norman's base offense level would remain unaffected by any such deductions even remotely supported by the facts in this case. Accordingly, the district court's sentence is AFFIRMED.

ENTERED FOR THE COURT

David M. Ebel, Circuit Judge

---

[5]We note that Norman raised this same argument regarding deductions for personal use in his earlier case (based on the charges stemming from October 1994). We stated:

> For the first time on appeal, Norman contends that the district court erred when it calculated drug quantities without deducting amounts which he possessed for personal use. We reject this claim outright. The district court adopted the drug quantity which Norman himself urged. Additionally, at trial Norman testified that the methamphetamine belonged to someone else, and he also testified that he had only used methamphetamine a few times.

United States v. Norman, 129 F.3d 1393, 1402 (10th Cir. 1997).