**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 6 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

LOWELL LEE WORMAN,

     Defendant-Appellant.

No. 98-8102
(D.C. No. 97-CR-0038-B)
(District of Wyoming)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON** and **EBEL**, Circuit Judges and **CROW**,[**] District Judge.

Appellant Lowell Lee Worman ("Worman") was convicted of four counts of willfully filing a false federal income tax return in violation of I.R.C. § 7206(1). On appeal, Worman argues that the funds not reported on his federal income tax returns from 1991 to 1994 were valid partnership distributions on which he did not owe taxes. He also argues that there was an impermissible

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Sam A. Crow, District Judge, United States District Court for the District of Kansas, sitting by designation.

variance, prejudicial to his defense, between the indictment and the evidence presented at trial. Finally, he argues that the district court improperly computed the tax loss for purposes of his sentencing. We affirm the district court's conviction and sentence.

BACKGROUND

The charges against Worman stem from Worman's position as general manager of Farmers' Cooperative Association of Gillette ("Coop") from 1991 to 1994, and from Worman's involvement with Whelchel Trucking, a trucking company formed in 1982 by Ernie Whelchel, Worman's brother-in-law at the time. The Coop is a non-profit business operation through which ranchers and farmers from northeastern Wyoming cooperate in marketing their crops, storing their crops, and buying supplies. Worman's duties at the Coop included running the business, keeping the books, paying suppliers of goods and services, and reporting to the Coop's board of directors.

From 1982 to 1994, Whelchel Trucking hauled products for the Coop as the Coop's exclusive hauler. As general manager of the Coop, Worman was responsible for paying Whelchel Trucking for the services Whelchel provided to the Coop. Evidence at trial indicated that over a period of several years Worman used Coop checks that should have been used to pay off Coop's debts to Whelchel

Trucking to provide payments to himself and to his credit card company. One practice Worman used was writing Coop checking account checks to MBNA, the issuer of his personal credit card and line of credit, but listing a different payee on the check stub. At trial, this practice was called "stubbing." Worman would list the payments in the Coop's books as business expenses and then subtract the payments from the amounts the Coop owed Whelchel Trucking.[1] Worman did not report these payments on his federal income tax returns from 1991 to 1994.

From 1983 to 1988, Ernie Whelchel filed U.S. Partnership Returns of Income for Whelchel Trucking. These returns, signed under penalty of perjury by Ernie Whelchel, indicated that Ernie Whelchel and Lee Worman each had a fifty percent interest in Whelchel Trucking. At trial, the government and Ernie Whelchel claimed that Worman was in fact never a partner at Whelchel Trucking, and that the only reason Worman was listed as a partner on the returns was because Worman had asked Ernie Whelchel in 1982 if he could use some of the tax deductions that Whelchel Trucking was unable to use. Ernie Whelchel stated at trial that he agreed to let Worman claim the deductions and then falsely listed Worman as a partner because of their friendship. Worman, on the other hand, maintained that he was a true partner in Whelchel Trucking.

---

[1]Worman's practice of deducting the payments from the amounts the Coop owed to Whelchel Trucking indicates that he was essentially taking money from Whelchel Trucking, not from the Coop.

In 1989, Ernie Whelchel changed his practice and did not file a partnership tax return for Whelchel Trucking; instead, he instructed H&R Block, who prepared his tax return, to treat the company as a sole proprietorship and to report Whelchel Trucking income on his own return. Ernie Whelchel stated that he made this change because he had discovered that sharing deductions probably was not legal. In 1990 and 1991, Whelchel Trucking income was reported on Ernie and Dorothy Whelchel's joint individual income tax return. When Dorothy Whelchel (Worman's sister) and Ernie Whelchel divorced in 1992, however, a partnership tax return was again filed for Whelchel Trucking. This return indicated that Ernie Whelchel was a thirty-three percent partner and Dorothy Whelchel was a sixty-seven percent partner. In 1993 and 1994, all income from Whelchel Trucking was reported on Dorothy Whelchel's individual income tax return. Worman reported no income from Whelchel Trucking from 1989 to 1994.

At trial, Worman did not challenge the allegations that he made payments to himself from Coop funds that should have been paid to Whelchel; rather, he argued that he was a partner in Whelchel Trucking, and that therefore he was entitled to those payments as distributions from the partnership. According to Worman, no taxes were due on those payments because they did not exceed his basis in the partnership.

The jury found Worman guilty of four counts of filing a false individual income tax return in violation of I.R.C. § 7206(1). He was sentenced to twenty-four months imprisonment for each count, to run concurrently, followed by one year of supervised release. He also was ordered to pay a special assessment of $400. In denying Worman's motion for judgment of acquittal notwithstanding the verdict, the district court found the following: (1) the evidence was sufficient for a rational trier of fact to find that Worman was never a partner in Whelchel Trucking, and that therefore the amounts he received from 1991 to 1994 were taxable; (2) even if Worman was a partner at one time, there was sufficient evidence for a rational trier of fact to find that the partnership terminated prior to the tax years for which Worman was prosecuted, and that therefore the amounts he received from 1991 to 1994 were taxable; (3) the indictment against Worman was not too vague and there was no variance between the charges in the indictment and the evidence produced at trial such that Worman would have been unfairly surprised by the government's theory at trial; and (4) Worman was not unfairly prejudiced by the court's comments about embezzled income. See United States v. Worman, No. 98-CR-038-B (D.Wyo. Nov. 3, 1998).

On appeal, Worman maintains that there was insufficient evidence for the jury to find that he was never a partner in Whelchel Trucking or, alternatively, if such a partnership had ever existed, it terminated prior to the tax years for which

- 5 -

he was prosecuted. He also maintains that there was an impermissible variance, prejudicial to his defense, between the indictment and the evidence presented at trial. Worman further argues that the district court incorrectly computed, for sentencing purposes, the tax loss that resulted from his conduct.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and we now affirm Worman's conviction and sentence.

DISCUSSION

I. Partnership Claim

"[I]n reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo and ask only whether, taking the evidence--both direct and circumstantial, together with reasonable inferences to be drawn therefrom--in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996) (internal quotations omitted).

Worman maintains that the evidence clearly showed that he was a partner in Whelchel Trucking and that the partnership did not terminate prior to the years for which he was prosecuted. In fact, he argues, as he must, that there was insufficient evidence for a reasonable jury to find otherwise. Worman then argues that if he was a partner in an existing partnership with Whelchel Trucking from

1991 to 1994, the funds he provided to himself should be viewed as valid partnership distributions, which, if they did not exceed his basis in the partnership, would not be taxable. See I.R.C. § 731(a)(1). An analysis of Worman's argument devolves into two questions for purposes of this appeal: (1) Was there sufficient evidence for a reasonable jury to find that Worman was never a partner in Whelchel Trucking?; and (2) If not, was there sufficient evidence for a reasonable jury to find that Worman's partnership interest in Whelchel Trucking terminated prior to 1991?

The record contains sufficient evidence from which a jury could reasonably conclude that Worman was never a partner in Whelchel Trucking, and therefore that the funds he paid to himself constituted income that should have been reported. Ernie Whelchel testified at trial that Worman was never a partner in Whelchel Trucking. He provided an explanation for the contradiction between that testimony and the tax returns that listed Worman as a partner when he testified that he only listed Worman as a partner so that Worman could take advantage of unused tax deductions. If the jury believed the evidence that the partnership returns showing Worman as a partner were merely to enable Worman to gain tax advantages, the conclusion that Worman was never a valid partner follows from the principle that an arrangement that is merely a device for tax

avoidance and otherwise is without substance will not be recognized as a valid partnership. See Commissioner v. Tower, 327 U.S. 280, 287-89 (1946).

In addition, from the evidence that Worman used Coop checks to pay his own expenses and concealed that practice from the Coop through "stubbing," a jury could reasonably conclude that Worman was attempting to hide an embezzlement scheme rather than acting as a partner who was taking a partnership distribution to which he believed he was entitled.

Although Worman argues that "bald assertions" by Ernie Whelchel are insufficient to create a question of fact for the jury on the partnership issue, his argument fails. The contradictions in the evidence between the tax returns listing Worman as a partner and the testimony by Ernie Whelchel at trial created a triable issue of fact for the jury. Taking the evidence, together with reasonable inferences to be drawn therefrom, in the light most favorable to the government, a reasonable jury could have found that Worman was in fact never a partner in Whelchel Trucking. That finding adequately supports the conclusion that the unreported funds constituted income that should have been reported.

We therefore do not need to reach the second question of whether, if Worman were a partner in Whelchel Trucking, there was sufficient evidence for a reasonable jury to conclude that the partnership terminated prior to 1991. From the evidence that Worman was never a partner in Whelchel Trucking, the jury

could have reasonably found Worman guilty beyond a reasonable doubt of willfully filing tax returns in violation of I.R.C. § 7206(1).

II. Variance

We review de novo the issue of whether a variance existed between the charges in the indictment and the evidence presented at trial. See United States v. Williamson, 53 F.3d 1500, 1512 (10th Cir. 1995).

"A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment." United States v. Hanzlicek, 187 F.3d 1228, 1232 (10th Cir. 1999) (citation omitted). "[N]o variance occurs when the government's theory on which the case was tried is the same as that charged in the indictment." United States v. Meyers, 95 F.3d 1475, 1485 (10th Cir. 1996).

Worman predicates his variance argument on a difference between the theory the government presented to the grand jury that he embezzled money from his employer, Coop, and its theory at trial that he was not a partner in Whelchel Trucking and that he had embezzled money from Whelchel Trucking when he credited his embezzled payments to amounts owed by the Coop to Whelchel Trucking. In both the indictment and at trial, however, Worman was simply charged with underreporting income in violation of I.R.C. § 7206(1). The government's theory in both the indictment and at trial was that Worman made

payments to himself using Coop checks and then willfully filed false tax returns that did not report those payments as income. The government presented evidence that (1) Worman realized income when he used Coop checks "stubbed" to Whelchel Trucking to pay his personal expenses; (2) Worman failed to report this income; and (3) Worman acted knowingly and willfully in filing false federal income tax returns. This evidence supported the indictment's charge of "reporting no 'Other Income' on the appropriate line of his tax return" when he "well knew and believed, he received other income . . . which was not reported." Worman had sufficient notice from the indictment of what the government would attempt to prove at trial. Accordingly, we find that the government's theory on which the case was tried was the same as that charged in the indictment and that therefore there was no variance between the indictment and the evidence presented at trial.

III. Tax Loss

We review the district court's factual findings for clear error and its legal interpretation of the sentencing guidelines de novo. See United States v. Norman, 129 F.3d 1393, 1398 (10th Cir. 1997). "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not

free to substitute our judgment for that of the district judge.'" United States v. Morales, 108 F.3d 1213, 1225 (10th Cir. 1997) (quoting United States v. Torres, 53 F.3d 1129, 1144 (10th Cir. 1995)).

For an offense that involves filing a tax return in which gross income was underreported, the Sentencing Guidelines provide that "the tax loss shall be treated as equal to 28% of the unreported gross income . . . unless a more accurate determination of tax loss can be made." U.S.S.G. §2T1.1(c)(1)(A). Worman makes two arguments in claiming that the court incorrectly computed the tax loss that resulted from his failure to report income. We find both of those arguments unpersuasive.

First, Worman argues that he should have been given credit for his partnership basis and his share of partnership liabilities. As discussed above, there was sufficient evidence to support the finding that Worman was never a partner in Whelchel Trucking. Thus, he is not entitled to credit for his partnership basis and his share of partnership liabilities. Therefore, Worman's first argument fails.

Second, Worman argues that the district court incorrectly calculated the amount of unreported income from Worman's 1991, 1992, 1993, and 1994 federal tax returns. To support this argument, Worman first contends that the district court should have calculated the unreported income from Worman's "distributive

share of partnership income not from the money distributed." Again, because there was sufficient evidence to support the finding that Worman was never a partner in Whelchel Trucking, this aspect of Worman's second argument is unpersuasive.

Worman next contends as part of his second argument that the district court's calculations were incorrect because they should have calculated the tax loss at "28% of the unreported gross income" instead of adopting the government's $42,632 tax loss figure. The sentencing guidelines state that the twenty-eight percent figure shall be used "unless a more accurate determination of tax loss can be made." U.S.S.G. §2T1.1(c)(1)(A). The district court made a finding, adequately supported by the evidence presented at trial, that the tax loss was $42,632. That finding was not clearly erroneous. Thus, we also find this aspect of Worman's second argument unpersuasive.

We therefore conclude that the district court did not improperly compute Worman's tax loss for purposes of sentencing when it calculated that loss at $42,632.

For the foregoing reasons, we AFFIRM Mr. Worman's conviction and sentence.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge