**PUBLISH**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 2002**

**PATRICK FISHER**
**Clerk**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TROY ALLEN GORMAN, also
known as Tracy Gorman,

    Defendant - Appellant.

No. 01-4249

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:00-CR-299-G)**

---

Scott C. Williams, Salt Lake City, Utah, for Defendant-Appellant.

Wayne T. Dance, Assistant United States Attorney, Chief, Appellate Section,
(Paul M. Warner, United States Attorney, with him on the brief), Salt Lake City,
Utah, for Plaintiff-Appellee.

---

Before **MURPHY**, **ANDERSON** and **O'BRIEN**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

Troy Allen Gorman was convicted by a jury of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On appeal, Mr. Gorman argues: (1) the district court abused its discretion by (a) admitting evidence pertaining to a bag of marijuana alleged to be in his possession at the time of his arrest and (b) admitting into evidence a box of ammunition where no officer specifically testified to finding it in his truck; (2) the evidence was insufficient to sustain the jury's verdict; and (3) the district court erred when it increased his sentence under the United States Sentencing Guidelines because of a prior dangerous weapons violation to which he had pled guilty under a negotiated "plea in abeyance." We AFFIRM.

## I. BACKGROUND

On September 2, 1999, Mr. Gorman pled guilty in state district court to attempting to provide a weapon to a person in custody—a third degree felony. The court agreed to stay the consequences of the guilty plea on condition of twenty-four months of good behavior. Less than eight months later, in the early hours of April 23, 2000, police officers investigated Mr. Gorman's truck, which was broken down and parked in a church parking lot, serving as a home for Mr. Gorman and his cousin Mr. Beckstead. Upon approaching the truck, officers smelled the odor of raw marijuana.

Mr. Gorman, who was sitting in the driver's seat, was asked to exit the

truck. Upon exiting, he threw the blanket that had been covering him on Mr. Beckstead. To ensure his safety, an officer removed the blanket so he could see Mr. Beckstead's hands and then noticed a hunting knife on the truck seat touching Mr. Beckstead's hand. Officers frisked Mr. Gorman and Mr. Beckstead for weapons and detained them.

Because of the smell of marijuana, an officer called for a narcotics sniffing canine. While conducting a preliminary sweep of the truck to protect the dog from sharp objects, an officer found a firearm secreted in a compartment on the driver's side of the dashboard underneath the steering column. The butt of the gun protruded from the dashboard compartment and was visible from the driver's side of the vehicle. The firearm, a 9mm semi-automatic handgun, contained a loaded magazine.

The dog was then placed in the truck and indicated odors from the floorboard of the passenger area and part of the seat cover on the driver's side of the vehicle. The officers found a large bag of marijuana behind the floorboard, which Mr. Beckstead later admitted was his. While searching the seat cover on the driver's side of the vehicle, officers found a second 9mm handgun magazine— unloaded and nonfunctional. Also, one of the officers noticed a small bag of marijuana had fallen to the ground during the search of the driver's seat cover.

A box of 9mm ammunition was also booked into evidence. No officer could

remember who found the ammunition or where it was located in the truck.

## II. DISCUSSION

### A. The Small Bag of Marijuana

The small bag of marijuana was identified as a government exhibit but not offered into evidence; testimony relating to it was allowed. Mr. Gorman argues the admitted testimony was not relevant to firearm possession, was unfairly prejudicial, and should have been excluded under FED. R. EVID. 404(b). Further, he contends the government did not give proper notice of its intent to use that evidence, as Rule 404(b) requires. We review for abuse of discretion. *United States v. Morris*, 287 F.3d 985, 989-90 (10th Cir. 2002).

Rule 404(b) forbids the use of other bad acts to prove the character of the defendant and to show the defendant acted in conformity with his character. "Other bad acts" means acts that are not part of the events giving rise to the present charges. *United States v. Record*, 873 F.2d 1363, 1372 n.5 (10th Cir. 1989). But acts intrinsic to or intertwined with the charged acts are not Rule 404(b) acts. *See id.*

The smell of raw marijuana emanating from the truck cab prompted the officers to call for a narcotics canine. Ultimately, preparing for and conducting the canine search led to the discovery of the marijuana and other evidence, *viz.* the

loaded firearm, unloaded magazine clip, and box of ammunition.

During the trial Mr. Beckstead admitted ownership of the large bag of marijuana, and several officers testified about both the small and large bags. No testimony named Mr. Gorman as the owner of the small bag and the jury was instructed that he was being tried only for illegal possession of a firearm.[1] The testimony relating to the marijuana—both the large and small bag—was intertwined with the discovery of the firearm and therefore necessary to understand the flow of events and put police conduct in context. It was not Rule 404(b) evidence, and before introduction it was subjected to Rule 403 evaluation.

Mr. Gorman argued these same issues during the hearing on his motion in limine. The district court found ". . . the probative value of that [the marijuana] and the connected aspect of it as the very impetus and reason for the search outweighs any prejudicial effect that might be asserted under Rule 403." Rather than an abuse of discretion, the trial court's considered approach in weighing

---

[1]Jury instruction No. 16 states:

During the trial you have heard testimony related to other forms of contraband seized from within the vehicle and in connection with the other occupant of the vehicle. This information is related primarily to provide you with the full background and context of the actions of the police officers in the course of contacting and arresting Mr. Gorman and Timothy Beckstead. The defendant is not charged with any offense related to any other contraband. You are not to speculate as to whether the defendant was involved in any uncharged criminal conduct.

probative value against unfair prejudice is the hallmark of a proper exercise of discretion.

Mr. Gorman also argues the trial court abused its discretion in concluding he had fair notice that the government planned to use the marijuana evidence at trial. Even if it was Rule 404(b) evidence, Rule 404(b) requires only that the government provide a defendant with "reasonable notice" prior to trial. Mr. Gorman may not have had formal written notice, but he had verbal notice of the government's intention to present the marijuana evidence at trial. That notice was evident from his admission at a hearing and made manifest in his motion in limine, filed more than a week before trial, seeking to exclude "his alleged possession of controlled substances," among other bad acts. We agree with the district court that the notice given was sufficient under the circumstances.

**B. The Box of Ammunition**

Mr. Gorman contends the district court erred in admitting the box of ammunition because it lacked proper foundation and authentication. Specifically, he argues the chain of custody was broken when no one could remember who found the box of ammunition or where it was located in the truck. We do not disturb a trial court's evidentiary ruling unless we are "firmly convinced that the district court 'made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *United States v. Magleby*, 241 F.3d

1306, 1315 (10th Cir. 2001) (quoting *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir. 1994)).

Testimony is sufficient to establish foundation for evidence that is "readily identifiable and relatively resistant to change." *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir.), *cert. denied*, 491 U.S. 909 (1989). The partially filled box of 9mm ammunition clearly meets this test. One officer testified that all evidence taken from inside the truck was placed on the hood of the truck and the box of ammunition was among those items. He said he took the evidence from the truck hood and transported it to the police station. Another officer testified to receiving, securing and accounting for the evidence, including the box of ammunition. Although these officers could not identify who found the box of ammunition, their testimony was sufficient foundation when placed in context and considered in light of all factual circumstances. In any event "deficiencies in the chain of custody go to the weight of the evidence, not its admissibility. . . ." *United States v. Humphrey*, 208 F.3d 1190, 1205 (10th Cir. 2000) (quoting *Cardenas*, 864 F.2d at 1531). We therefore find no abuse of discretion in admitting such evidence.

**C. Sufficiency of the Evidence**

Claims of insufficiency of the evidence prompt *de novo* review. *United States v. Van Tieu*, 279 F.3d 917, 922 (10th Cir. 2002). "Evidence is sufficient to

support a conviction if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt . . . . We resolve any conflicts in the evidence in favor of the Government." *Id*. at 921-22.

In a conviction of possession of a firearm by a convicted felon pursuant to 18 U.S.C. § 922(g)(1), the government must prove "beyond a reasonable doubt: (1) the defendant was previously convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce." *United States v. Taylor*, 113 F.3d 1136, 1144 (10th Cir. 1997), *cert. denied*, 528 U.S. 904 (1999). The parties stipulated to parts one and three, requiring the government to prove only that Mr. Gorman knowingly possessed the firearm.

The government may satisfy the element of knowing possession of a firearm by showing constructive possession: where a defendant "knowingly hold[s] the power to exercise dominion or control over the firearm." *Van Tieu*, 279 F.3d at 922 (10th Cir. 2002) (quoting *United States v. Heckard*, 238 F.3d 1222, 1228 (10th Cir. 2001)). Knowledge and control can be inferred where a defendant has exclusive possession of the premises, but where a defendant jointly occupies the premises the government must "show some connection or nexus between the defendant and the firearm or other contraband." *Taylor*, 113 F.3d at 1145.

-8-

Mr. Gorman did not have exclusive possession of his truck because Mr. Beckstead was present when the gun was found and both men were living out of the truck. However, sufficient nexus between Mr. Gorman and the firearm was established by testimony describing the location of the gun on the driver's side of the vehicle and demonstrating it was visible and retrievable from the driver's seat, where Mr. Gorman was sitting immediately prior to the search. Additionally, the second unloaded 9mm magazine was found in the driver's seat cover. Finally, evidence established Mr. Gorman was an auto mechanic by profession, who owned and worked on the truck. One could reasonably conclude he would know its special details and convenient hiding places. Based on these facts a reasonable jury could find Mr. Gorman had knowledge of and dominion or control over the firearm.

**D. Utah's Plea in Abeyance**

Mr. Gorman contends the district court erred in adding two points to his criminal history category for a plea in abeyance.[2] UNITED STATES SENTENCING

---

[2]Utah's plea in abeyance statute provides: "'Plea in abeyance' means an order by a court . . . accepting a plea of guilty or of no contest from the defendant but not, at that time, entering judgment of conviction against him nor imposing sentence upon him on condition that he comply with specific conditions. . . ." UTAH CODE ANN. § 77-2a-1 (2002).

> [T]he court may, upon finding that the defendant has successfully completed the terms of the agreement: (a) reduce the degree of the offense and enter judgment of conviction and impose sentence for a lower degree of offense; or (b) allow withdrawal of defendant's plea and order the dismissal

GUIDELINES § 4A1.1(d)(2001) (hereinafter "USSG") allows the addition of two points to the defendant's offense level "if the defendant committed the instant offense while under any criminal justice sentence." A "criminal justice sentence" is a sentence countable under USSG § 4A1.2, including a "prior sentence" and a "diversionary disposition," "having a custodial or supervisory component, although active supervision is not required." USSG § 4A1.1(d), cmt. n.4. A prior sentence is "any sentence previously imposed upon adjudication of guilt," and is counted to enhance the sentencing level even if the imposition of sentence was completely suspended or stayed, or the sentence was not yet determined and entered. *Id*. § 4A1.2(a)(1), (a)(3) and (a)(4). A diversionary disposition based on a finding or admission of guilt is also counted as a prior sentence and used to enhance the sentencing level "even if a conviction is not formally entered." *Id.* § 4A1.2(f).

One point is added to a defendant's criminal history category for a "prior sentence" or a "diversionary disposition," *Id.* §§ 4A1.1(c), 4A1.2(a)(f), but two points are added for a "criminal justice sentence." *Id.* § 4A1.1(d). The difference

of the case. . . . If . . . information comes to the attention of the prosecuting attorney or the court that the defendant has violated any condition of the agreement, the court . . . may terminate the agreement and enter judgment of conviction and impose sentence against the defendant for the offense to which the original plea was entered.

*Id*. §§ 77-2a-3(2), (5); 77-2a-4(a)(2001).

-10-

is whether, because of his prior conviction, the defendant was subject to a "supervisory component" when he committed the instant crime. Had Mr. Gorman been found with a firearm even after successfully completing the conditions imposed as a result of his plea in abeyance, it would have still counted as a prior sentence, adding one point to his criminal history category under USSG § 4A1.1(c). But because he had not complied with the court's order during its term, and was therefore subject to the consequences of violation, he was subject to a two point addition under USSG § 4A1.1(d) if the plea in abeyance satisfied the "supervisory component" of a criminal justice sentence.

Where objections to sentencing are asserted, we review the district court's factual findings for clear error but consider *de novo* its legal interpretations of the United States Sentencing Guidelines. *United States v. Norman*, 129 F.3d 1393, 1398 (10th Cir. 1997). Whether Utah's plea in abeyance has the necessary "supervisory component" to make it a "criminal justice sentence" is a legal interpretation.

Mr. Gorman's plea in abeyance was both an adjudication of guilt and a conviction. Utah law defines a conviction as "(a) judgment of guilt; (b) plea of guilty; or (c) plea of no contest." UTAH CODE ANN. § 77-38a-102(1) (202). A plea in abeyance is conditioned upon a defendant pleading guilty or no contest. *Id.* § 77-38a-102(8). Thus, upon entry of a guilty plea and its acceptance, a defendant

is convicted under Utah law, but the full consequences of conviction are not visited upon a defendant who completes the conditions associated with the plea in abeyance.

It is less clear whether sentence was imposed within the meaning of the United States Sentencing Guidelines, but we note that some Utah statutes consider a plea in abeyance as a criminal disposition. UTAH CODE ANN. § 77-36-1.1 (the penalty for domestic violence can be enhanced if the perpetrator has a prior domestic abuse conviction; "[f]or purposes of this section, a plea in abeyance is considered a conviction"); *id*. § 61-2c-301(2) (convictions, pleas of guilty or nolo contendere, and pleas in abeyance are considered criminal dispositions for persons engaged in the business of residential mortgage loans).

We have never considered whether Utah's plea in abeyance constitutes a criminal justice sentence for purposes of USSG § 4A1.1(d), but we have determined two distinct deferred judgment statutes to be criminal justice sentences. Oklahoma's deferred judgment, which imposes a formal probation, is a criminal justice sentence. *United States v. Vela*, 992 F.2d 1116 (10th Cir. 1993). Likewise, we determined Colorado's deferred sentence,[3] which "<u>may</u> place the

---

[3]Colorado's deferred judgment, in force at the time of *Norman*, has been repealed and renumbered. No substantive changes, however, were made to the statute, which states in part:

[T]he defendant is obligated to adhere to such stipulation. The conditions imposed in the stipulation shall be similar in all respects

defendant under the supervision of the probation department," results in a criminal justice sentence even when there was no formal supervision, because the deferred sentence imposed "probation-like" components. *Norman*, 129 F.3d at 1401 n.13, 1402 (emphasis added).

Mr. Gorman argues Colorado's deferred sentence, and thus Utah's plea in abeyance, are not probationary in nature and should not be considered criminal justice sentences. He relies on *United States v. Kipp*, 10 F.3d 1463 (9th Cir. 1993), but in so doing seems to ignore a salient fact. We distinguished *Kipp* in *Norman*, specifically stating *Kipp* was distinct because no conditions were imposed on the defendant in conjunction with his deferred sentence. *Norman*, 129 F.3d at 1402 n.15.

Utah's plea in abeyance is similar to Colorado's deferred judgment. Under both, after the defendant enters a guilty plea the court may refrain from entering the judgment and sentence and instead impose specific conditions to which the defendant must adhere. UTAH CODE ANN. § 77-2a-1 (2002); COLO. REV. STAT. §

to conditions permitted as part of probation . . . . Upon full compliance with such conditions by the defendant, the plea of guilty previously entered shall be withdrawn and the charge upon which the judgment and sentence of the court was deferred shall be dismissed with prejudice . . . . [U]pon a breach by the defendant of any condition regulating the conduct of the defendant, the court shall enter judgment and impose sentence upon such guilty plea.

COLO. REV. STAT. 16-7-403(2), *repealed by* COLO. REV. STAT. § 18-1.3-102(2) (2002).

18-1.3-102 (2002).  In Utah, the specific conditions can be "any other conditions which could have been imposed as conditions of probation," and the Department of Corrections may be required "to assist in the administration of the plea agreement as if the defendant were on probation of the court,"  UTAH CODE ANN. §§ 77-2a-3(5)(e), 77-2a-3(4)(2002).  In Colorado, the conditions are to be "similar in all respects to conditions permitted as part of probation."  COLO. REV. STAT. § 18-1.3-102(2)(2002).

In both states, if the defendant complies with all conditions, the guilty plea can be withdrawn and the case dismissed; if the defendant does not comply, the court can terminate the deferral, enter judgment and impose sentence on the original guilty plea.  *Id*.; UTAH CODE ANN. §§ 77-2a-3, 77-2a-4(2002).  Utah's plea in abeyance, like Colorado's deferred sentence, includes probation-like components.

Mr. Gorman pled guilty to a third degree felony offense, attempting to provide a weapon to a person in custody, under a court approved agreement allowing the plea to be held in abeyance.  The matter was to be held in abeyance for 24 months—beginning September 2, 1999—during which time Mr. Gorman was <u>required by court order</u> to maintain good behavior, refrain from violating the law, and pay a fee of $300.  Although there was no active supervision of Mr. Gorman, the court retained the power to terminate the agreement, fine and

incarcerate him if he violated the law or failed to abide by the other conditions of the court's order. Several sister circuits have held the court's termination power to be a sufficient supervisory component to establish a criminal justice sentence.

The Eighth Circuit determined Illinois's conditional discharge sentence, which is a "conditional and revocable release without probationary supervision," is the "functional equivalent" of unsupervised probation, and is a criminal justice sentence for purposes of USSG § 4A1.1(d). *United States v. Lloyd*, 43 F.3d 1183, 1187 n.4, 1188 (8th Cir. 1994).

Likewise, the Sixth Circuit held Kentucky's conditionally discharged sentence to be a criminal justice sentence pursuant to § 4A1.1(d) where "probationary supervision is inappropriate," but where the court imposes conditions, the noncompliance of which could result in a revocation of the conditionally discharged sentence. *United States v. Miller*, 56 F.3d 719, 721-22 (6th Cir. 1995).

The Second Circuit concluded New York's conditional discharge sentence could be counted as a criminal justice sentence because the necessary supervisory component was present in that the court "retained the power to revoke the conditional discharge sentence," despite a lack of probationary supervision. *United States v. Labella-Szuba*, 92 F.3d 136, 138 (2nd Cir.), *cert. denied*, 519 U.S. 1047 (1996).

Although distinct in name, Utah's plea in abeyance is similar to both deferred sentences and conditional discharge sentences. If the court finds that its order, entered upon the plea in abeyance agreement, was violated by a defendant, it can enter judgment and impose sentence upon the previously accepted guilty plea. As evidenced in *Norman* and in sister circuits, this simple supervisory component is sufficient to satisfy the requirements of a criminal justice sentence and thus add two points to a defendant's criminal history category in accordance with USSG § 4A1.1(d). *See generally, Norman*, 129 F.3d 1393.

Our reasoning is in harmony with the United States Sentencing Guidelines' expressed purpose of increasing sentences for repeat offenders. USSG Ch.4, Pt. A, intro. comment. In keeping with that purpose, "defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency." *Id.* § 4A1.2, cmt. n.9. While not itself an end, lenity can be a means to an end; it offers opportunity and expresses hope. But it defies reason, as well as the text and purpose of the United States Sentencing Guidelines, to continue to hope when hope has become forlorn. *See Callanan v. United States*, 364 U.S. 587, 596 (1961). "General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence." USSG Ch.4, pt.A, intro. comment.

The district court's two-level enhancement of Mr. Gorman's criminal history category was appropriate.

## III.  CONCLUSION

We hold the district court did not abuse its discretion in its evidentiary rulings, the evidence was sufficient to support the jury's verdict, and it was appropriate to add two points to Mr. Gorman's criminal history category for his plea in abeyance.

We AFFIRM the judgment of the district court.