UNITED STATES of America,
Plaintiff,

v.

Siale PAHULU, Defendant.

No. 2:02CR–688JTG.

United States District Court,
D. Utah,
Central Division.

Aug. 4, 2003.

Gregory W. Stevens, Salt Lake City, UT, for Defendant.

John W. Huber, West Valley City Atty's Office, West Valley City, UT, for U.S.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

Defendant Siale Pahulu was found guilty by a jury of being a felon in possession of a firearm and associated ammunition in violation of 18 U.S.C. § 922(g)(1). Defendant

filed a Motion for Judgment of Acquittal which was fully briefed, argued, and taken under advisement.

Now being fully advised, the court issues its Memorandum Decision and Order granting defendant's motion.

## BACKGROUND FACTS

The evidence at trial showed that on October 20, 2002, Detective Ikemiyashiro of the Sandy City Police and Detective Bailey of the Salt Lake County Sheriff's Office conducted a lawful stop of a minivan driven by defendant Pahulu. The minivan was registered to the defendant's mother but the defendant stated that he was the "primary driver" of the vehicle. A passenger, Kirk Sio, was also present in the vehicle. Both the defendant and Sio were employed to provide security for "Fat Pack Productions", a music production company.

A lawful search of the minivan revealed a Spyderco knife—in the front console—described as a "tactical knife" generally used as a weapon. Further search of the far back luggage area of the minivan lead to the discovery of another knife, tactical pepper spray, and a silver colored metal case containing the camouflaged shotgun and associated ammunition which the defendant was charged with possessing.

Immediately upon opening the silver colored case in the course of searching the far back luggage area of the minivan, Detective Ikemiyashiro realized it contained a firearm, stepped back and said to Detective Bailey, "Check this out." Less than a minute after Detective Ikemiyashiro opened the case revealing the gun to Detective Bailey, the defendant made the unsolicited and apparently spontaneous statement: "That isn't mine, I don't know how it got there." Detective Ikemiyashiro testified that the defendant's voice sounded surprised and worried when he made this statement, but that defendant remained soft spoken during the entire interaction.

At the time the gun was discovered, the defendant and Sio were seated on the street curb less than five feet behind the minivan with Detective Bailey standing between them and the minivan. Detective Bailey could see that the metal case contained a firearm as soon as it was opened. However, the government offered no evidence to show the defendant's line of sight in relation to the case and its contents, or whether the defendant had seen the gun in the case before he made the aforesaid statement. Accordingly, it remains unclear whether the defendant and Sio saw or could have seen the case and/or the gun from where they were sitting at the time of defendant's statement, "That isn't mine, I don't know how it got there." There were no fingerprints linking the defendant to the case or its contents. The police did not check either of the knifes or the pepper spray for fingerprints.

According to testimony, the firearm was manufactured in Connecticut, sent to Corsicana, Texas, and then was retailed at a Kmart store in Euless, Texas. However, no evidence was presented as to how the firearm got to Utah, or the identity of the original purchaser. No evidence was offered to show that the defendant and the firearm were in Euless, Texas in the same time period and there was no showing of any direct connection between the firearm and defendant.

The defendant told police that in the past he had lived in Euless, Texas. On his upper right arm, defendant has a tattoo that says, "Euless Texas." While searching the defendant's wallet the detectives also discovered a Texas Department of Corrections Photo ID card. Euless, Texas had a population of about 46,166 in the year 2000. A background check of Sio

revealed no connection between him and Euless, Texas.

## ANALYSIS

 To prove a violation of § 922(g)(1), the government must establish the following elements beyond a reasonable doubt: (1) that the defendant was previously convicted of a felony; (2) that the defendant thereafter knowingly possessed a firearm; and (3) that the possession was in or affecting interstate commerce. *United States v. Taylor*, 113 F.3d 1136, 1144 (10th Cir.1997). The parties stipulated to elements one and three. Therefore, the government need only have proved that the defendant knowingly possessed the firearm and ammunition.

 The Tenth Circuit has laid out the legal standard to support a conviction and overcome a motion for judgment of acquittal as follows. "Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Van Tieu*, 279 F.3d 917, 921 (10th Cir.2002) (citing *United States v. Vallo*, 238 F.3d 1242, 1246 (10th Cir.2001)). "The evidence presented to support conviction must be substantial; it must do more than raise a mere suspicion of guilt." *Taylor*, 113 F.3d at 1144 (citing *United States v. Sanders*, 929 F.2d 1466, 1470 (10th Cir.1991)).

## I. REASONABLE INFERENCE V. SPECULATION

 A Jury may draw reasonable inferences from the evidence but a verdict cannot be supported by speculation. The Tenth Circuit has adopted the Third Circuit approach which draws the line between a reasonable inference and mere speculation,

> If there is ... logical probability that an ultimate fact will follow from a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.

*United States v. Jones*, 49 F.3d 628, 632 (10th Cir.1995) (quoting *Tose v. Pennsylvania Bank, N.A.*, 648 F.2d 879, 895 (3d Cir.1981)).

While inferences drawn from facts in evidence are appropriate, inferences drawn from other inferences are not. Black's Law Dictionary defines the "Inference upon Inference Rule" as follows: "The principle that a presumption based on another presumption cannot serve as a basis for determining an ultimate fact." Black's Law Dictionary 781–82 (7th ed.1999). It is Hornbook law that a factfinder may not pile one inference upon another. In this regard, the court in *Jones* ruled that testimony that the defendant was observed exploring under the dash and hood of a car did not justify the inference that the defendant was trying to hide items later found under the dash and hood of the same car because it required the jury to pile one inference upon another. 49 F.3d at 633. The court reasoned that without proof that the defendant had possessed the gun and drugs at issue the inference that the defendant was trying to hide these items was mere conjecture. *Id.* In a factually unrelated case the Tenth Circuit stated the applicable rule of law to be that although "the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable, and 'caution must be taken that the conviction not be obtained "by piling inference on inference."'" *United States v. Jones*, 44 F.3d 860, 865 (10th Cir.1995)(citing *United States v. Butler*, 494 F.2d 1246, 1252 (10th Cir.1974) (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943))).

The Tenth Circuit has grappled with what properly may be regarded as reasonable and "plausible inference." In *United States v. Mills*, 29 F.3d 545, 547 (10th Cir.1994) the government established uncontroverted evidence that the defendant had knowledge of guns, owned by his roommate, by showing that the defendant had moved the guns—under police supervision—from his roommate's truck into the garage. *Id.* at 550. A week later, during execution of a search warrant, the guns were found in the compartment of a dining room table also belonging to the defendant's roommate. In that case the Tenth Circuit found no nexus between defendant Mills and the guns because the evidence presented did not support a "plausible inference" that he had knowledge of their presence in the dining room table, even though the government had established by direct evidence that at some point in time the defendant had been in contact with the firearms.

In the case at bar, the government's case in support of the essential requirement that defendant knowingly possessed the firearm in question was based largely on inferences, as well as inference upon inference.

## II. CONSTRUCTIVE POSSESSION IN JOINT OCCUPANCY CASES

### A. *Constructive Possession—In General*

■ According to the Tenth Circuit, "[i]t is well settled the required 'possession' for purposes of § 922(g) includes both actual and constructive possession." *Mills*, 29 F.3d at 549. To establish constructive possession, the government must show that the defendant knowingly held dominion and control over the firearm and the vehicle where it was found. *Id.* When a defendant has exclusive possession of the premises on which the contraband is found, knowledge, dominion and control are properly inferred. *United States v.*

*Heckard*, 238 F.3d 1222, 1228 (10th Cir. 2001). However, the Tenth Circuit has held that "joint occupancy alone cannot sustain the inference of dominion, control and knowledge." *United States v. Hishaw*, 235 F.3d 565, 570 (10th Cir.2000) (citing *Mills*, 29 F.3d at 549).

In this case more than one possibility existed as to who the jury might have found to possess the firearm—the defendant or the other occupant of the vehicle. Accordingly, in order to establish a reasonable inference that defendant knowingly possessed the firearm within the minivan, the government had the burden of proof to establish a nexus or connection between the defendant and the firearm.

### B. *Nexus Requirement in Constructive Possession Joint Occupancy Cases*

■ In joint occupancy cases where the government relies on circumstantial evidence to infer dominion, control, and knowledge, it must also present evidence of some connection or nexus between the defendant and the contraband. *Hishaw*, 235 F.3d at 570. Evidence showing such a nexus must support "a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *Taylor*, 113 F.3d at 1136.

In this case, the government relied on three separate pieces of circumstantial evidence to create an inference of defendant's knowledge, dominion and control, and thus establish the required nexus.

#### 1. *Inference Based on a Statement by Defendant*

■ The government contends that the jury could have inferred that defendant had prior knowledge, dominion and control of the firearm because he could not have seen the firearm immediately prior to making his statement, "That isn't mine, I don't know how it got there." It is argued

that the jury could have plausibly inferred defendant's prior knowledge of the firearm based upon the likelihood that the defendant did not see the gun at the time the detectives discovered it. The trouble with such an inference is that defendant was seated less then five feet behind the minivan, a distance in close enough proximity that he may have been able to perceive clearly an object the size of the firearm or the case holding it. The government made no attempt to prove that the defendant could not see the case or firearm from his seated position. In that regard, Detective Bailey easily could see the case and the firearm from a similar vantage point between the defendant and the back of the vehicle. Also, the sought after inference becomes less plausible because defendant's statement did not necessarily refer to the firearm but may also have referred to the case in which the firearm was found.

Manifestly, the evidence presented does not support a plausible inference of prior awareness and knowledge of the firearm based on the supposition that the defendant could not have seen the firearm when he made the statement, "That isn't mine, I don't know how it got there." An inference based on speculative supposition simply doesn't cut the mustard. Accordingly, this court rules that defendant's statement in and of itself does not support an inference that he had knowledge, dominion and/or control of the gun in the back part of the minivan.

### 2. Inference Based on Presence of Tactical Weapons and Employment in Security

■ The government argues that the defendant's work in security, in combination with the tactical nature of the weapons discovered in the minivan, would support a plausible inference of defendant's knowing dominion and control over the firearm. This court rejects that argument

and considers that such a conclusion could only be based on speculation.

In the case at bar, the government failed to establish either that the knives or the pepper spray were in any way linked to the defendant other than their presence in the minivan he was driving. Also, the government presented no evidence that the defendant used the minivan for work purposes. Finally, the government presented no evidence that security workers at "Fat Pack Productions" used the kind of weapons found in the minivan, or that such weapons are generally used in security work, or that a tactical advantage in security work exists when such weapons are possessed.

Most importantly, however, any inference that may be drawn from the evidence concerning security work, the knives and the pepper spray would be equally applicable to the co-occupant, Sio. Sio as well as the defendant worked in security and as a joint occupant had access to all the weapons found in the minivan.

This court is persuaded that the presence of other tactical weapons and the defendant's line of work in security did not establish an inference based on facts sufficient to show a nexus between the defendant and the specific firearm involved in this case. This court rejects as speculation and conjecture a nexus between the defendant and the firearm based upon the tactical weapons and security work.

### 3. Inference Based on Supposed Connection in Euless, Texas

■ Finally, the government argues that because the firearm and the defendant both have a connection with Euless, Texas, a nexus is shown between the defendant and the firearm sufficient to support a plausible inference that the defendant had knowledge of the firearm. However, no evidence was presented to

show that the defendant and the firearm were in Euless, Texas at approximately the same time. There was no evidence that defendant bought or obtained possession of the firearm there, and there was not even circumstantial evidence that the defendant had any prior contact with the firearm at issue at any place or time. Accordingly, this court finds that a supposed nexus between the defendant and the firearm based upon Euless, Texas is too remote and speculative to support a plausible inference that the defendant knowingly held dominion and control over the firearm.

Circumstantial evidence may allow the jury to draw inferences from facts proven. However, for the jury to have found that because sometime in the past defendant had lived in Euless, Texas and that at some time in the past the gun had been offered for sale in Euless, Texas a plausible inference came into existence that the defendant knowingly held dominion and control over the firearm would have required them to draw several inferences from facts not proven or from another inference. The trace done on the firearm at issue revealed that it was first offered for sale in Euless, Texas but did not reveal whether it was purchased in Euless, Texas or subsequently sent to another retailer elsewhere. The jury therefore could not have plausibly inferred that the firearm was acquired by defendant in Euless, Texas. Neither could the jury infer that the defendant or someone he knew had acquired the firearm in Euless or anywhere else. To infer that defendant had acquired the firearm from Euless, Texas the jury also would have had to assume that the defendant or someone he knew lived or was in Euless, Texas at the time the firearm was retailed and sold there. No evi-

dence was presented as to when the gun was retailed in Euless or as to when the defendant was last in Euless. No evidence was presented to show that the defendant knew someone who had been in Euless who might have sold or given the gun to him. Finally, the government failed to show that the defendant ever possessed the firearm prior to its discovery in the minivan he was driving.[1]

The Texas Department of Corrections Photo ID card found in the defendant's wallet demonstrated to the jury that the defendant was a Texas felon. The government argues that the defendant's youth, plus the fact that he was a Texas felon, could have lead the jury to infer that he had been in Texas recently. However, even if such an inference were made, the jury would still have been left to speculate as to when the gun was in Euless, Texas and whether such time coincided with the defendant's inferred presence there.

The government cites *United States v. Gorman*, 312 F.3d 1159 (10 Cir.2002) to support its contention of an alleged nexus in this case. The present case is entirely distinguishable from *Gorman*. In *Gorman*, the firearm was found on the drivers side of the vehicle where the defendant had been sitting immediately prior to the search. *Id.* at 1161–62. Additionally, the magazine of the gun was found in the driver's seat cover. *Id.* at 1162. In the case now before the court, the gun was at the very back of a large minivan and apparently was not visible from the driver's seat. Police found nothing close to the driver's seat where the defendant had been sitting immediately prior to the search that connected him with the gun.

1. This is similar to the fatal defect in *Jones* in which the jury speculated that defendant was hiding guns and drugs when there was no evidence he had ever possessed these items in the first place. *Jones,* 49 F.3d at 633.

## CONCLUSION

This court concludes that no reasonable inference of prior knowledge, dominion and control could be drawn from defendant's statement, "That isn't mine, I don't know how it got there," or from defendant's work in security and the presence of tactical weapons in the minivan, or from an alleged nexus between defendant and the firearm in the Euless, Texas. Each of these matters is too weak and speculative to support a plausible inference that defendant knowingly held dominion and control over the firearm. Accordingly, viewed in the light most favorable to the government, this court rules as a matter of law that the jury did not have sufficient evidence to convict defendant. No reasonable jury could have found defendant guilty beyond a reasonable doubt.

Based upon the foregoing, defendant's Motion for Judgment of Acquittal is hereby

GRANTED.

IT IS SO ORDERED.