FILED
United States Court of Appeals
Tenth Circuit

April 30, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

HOMER LYDELL EXOM,

Defendant – Appellant.

No. 13-5055
(D.C. No. 4:12-CR-00191-JHP-1)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **EBEL** and **PHILLIPS**, Circuit Judges.

Homer Exom appeals his conviction for possessing a firearm or ammunition while a felon, in violation of 18 U.S.C. § 922(g)(1). First, he contends the district court erred in denying his challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), after the prosecution used a peremptory challenge to dismiss the only black juror on the panel. We conclude that the district court rightly denied his *Batson* challenge based on the prosecution's persuasive race-neutral justification. Second, he argues the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

prosecution failed to present sufficient evidence for conviction. We conclude that the government provided evidence—including testimony regarding Exom's movements before the traffic stop and his proximity to the ammunition—sufficient to support the inference that Exom knew about and had access to the ammunition. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

On the night of September 11, 2012, Officers Calhoun and Dawson stopped a white Chevy Tahoe because its tag light was out, which kept them from seeing the license plate's number.[1] After the officers activated their lights and sirens, Exom drove the Tahoe about another two blocks before turning into a gas station. As the officers pulled behind the Tahoe, they saw him momentarily bend down. From these movements, the officers suspected that Exom was trying to conceal something under his seat. The officers also saw a passenger in the Tahoe.

Officer Calhoun approached the driver's side of the Tahoe and found Exom at the wheel, his eyes bloodshot and his speech "lethargic." Supp. R. vol. 1, at 132, 146–147. Exom couldn't produce a driver's license. Officer Calhoun had Exom get out of the Tahoe and spoke with him before placing him in handcuffs. Officer Calhoun then went to his police car to run a record check.

---

[1] The record does not contain a video of the stop.

While Officer Calhoun was in the police car, Officer Dawson had the passenger get out of the Tahoe. For safety reasons, Officer Dawson looked under the driver's seat based on his suspicion that Exom had hidden something there. He discovered a handgun magazine containing ten cartridges of 9mm ammunition.

The record check revealed that the tags expired more than 90 days before, meaning the Tahoe could be impounded. The officers began the usual pre-impoundment inventory. In doing so, Officer Calhoun noticed a loose panel in the driver-side door. Hidden behind, he found a Heckler & Koch 9mm pistol.

At some point, Exom's girlfriend, Felicia Johnson, arrived at the scene on foot. By this time, Officer Calhoun had finished his record check and presumably had learned that Exom was a convicted felon. The officers explained to her that they had arrested Exom because they found a firearm in the Tahoe. In response, Johnson told the officers that she owned the firearm and that they would not find Exom's fingerprints on it.[2] At trial, she testified that she and Exom shared the Tahoe but that she had purchased it. She also testified that she created the compartment inside the panel by removing the window and lock control switch, pulling the door panel off, and then putting the panel and control switch back in place.

Exom was charged in a single count with violating 18 U.S.C. § 922(g)(1), which makes it a crime for felons to possess firearms or ammunition. He proceeded to trial.

---

[2] The officers requested a fingerprint analysis of the gun. As of trial, Officer Calhoun did not know the status of that analysis.

During voir dire, the prosecution asked if any of the prospective jurors, or their friends or family members, had ever been involved in a criminal case, as a witness, a victim, or a defendant. Two prospective jurors responded. The first explained that 20 years before he had pleaded no contest to possession of less than an ounce of marijuana. He said he felt that he had been poorly treated and, therefore, harbored a prejudice against law enforcement. Still, he said, he could be a fair juror. The second prospective juror, the only black member of the venire, said that his 28-year old son had recently served jail time for firearm and drug-trafficking offenses. The prosecutor asked whether the son was treated fairly, and the man said, "I believe he was." Supp. R. vol. 1, at 51. The prosecutor asked if the man understood why his son had been punished, and he said, "I do now." *Id.* at 52. Finally, the prosecutor asked if there was anything about what his son went through that would prejudice the man against the government, law enforcement, or Exom. The prospective juror said, "No." *Id.*

The prosecution used two of its six peremptory challenges to dismiss both men.[3] Exom's attorney raised a *Batson* objection to the dismissal of the second, stating, "He's the only African American on the jury." *Id*. at 87. The government responded that it was excusing him because of his son's criminal history. The district court found that reason adequate and overruled the *Batson* challenge.

---

[3] The defense had ten challenges and the government had six. The defense complained about only one of the government's six challenges.

At the close of the government's case, Exom raised a motion for judgment of acquittal, which the court denied. Exom did not renew that motion at the end of trial. After a one-day trial and about five hours deliberating,[4] the jury found Exom guilty. On April 23, 2013, the district court sentenced him to 110 months imprisonment, followed by three years of supervised release. Exom timely appealed.

## DISCUSSION

Exom raises two challenges on appeal. First, he argues the district court erred in denying his challenge to the government's peremptory strike of the only black member of the venire under *Batson v. Kentucky*, 476 U.S. 79 (1986). And second, he argues that the evidence was insufficient to support a finding of guilt. We address, and reject, each of these challenges in turn.

### 1. The *Batson* Challenge

In *Batson v. Kentucky*, the Supreme Court held that purposeful discrimination based on the race of a juror violates the Equal Protection Clause of the Fourteenth Amendment. 476 U.S. at 84. *Batson* provides a three-step analysis for determining whether a peremptory strike runs afoul of this rule: (1) the defendant must present a prima facie case by showing facts supporting an inference of discriminatory purpose; (2) if the defendant satisfies step one, the burden shifts to the government to provide

---

[4] The jury deliberated for one and a half hours on January 16, 2013 and for three hours on January 17, 2013.

a race-neutral justification; and (3) if the government can do this, the court then decides whether purposeful racial discrimination nonetheless occurred. *Johnson v. California*, 545 U.S. 162, 168 (2005).

Here, the prosecution dismissed the only black juror on the panel, and Exom immediately raised a *Batson* challenge—step one.[5] The prosecutor proceeded to offer the race-neutral justification that the juror's son had been prosecuted for gun and drug crimes—step two. *See Hernandez v. New York*, 500 U.S. 352, 360 (1991) ("A [race-]neutral explanation . . . means an explanation based on something other than the race of the juror."). The court then ruled on the challenge—and it is at this third step that Exom contends reversible error occurred.

Exom argues that the government's race-neutral justification was a mere pretext because the juror told the prosecution that his son's previous convictions would not prejudice his decision-making. But the district court found the government's justification to be credible and, when it comes to such determinations, we affirm unless there is clear error. *See United States v. Sneed*, 34 F.3d 1570, 1579–80 (10th Cir. 1994).

---

[5] The district court did not explicitly find that Exom had made out a prima face case of discrimination, but this issue "becomes moot whenever the prosecutor offers a race-neutral explanation for his peremptory challenges and the trial court rules on the ultimate factual issue of whether the prosecutor intentionally discriminated." *United States v. Johnson*, 941 F.2d 1102, 1108 (10th Cir.1991). The prosecutor offered such an explanation here, and the district court proceeded to step three under *Batson*.

We find no error here. The district court rightly concluded that the government's race-neutral justification for dismissing the only black member of the venire was persuasive and not pretextual. *See Johnson v. California*, 545 U.S. 162, 171 (2005). Regardless of race, a juror's admission that a family member was convicted of a crime similar to the one being adjudicated could cause legitimate concern. The juror in question might have difficultly not being influenced by his son's conviction when considering Exom's guilt or innocence. And that possibility is not altogether eliminated by an assurance of impartiality from the juror. We therefore affirm the district court's decision to deny Exom's *Batson* challenge.

## 2. Sufficiency of the Evidence

Exom argues that there was insufficient evidence for the jury to conclude that he knowingly possessed a firearm or ammunition. We generally review the sufficiency of the evidence de novo. *United States v. Voss*, 82 F.3d 1521, 1524–25 (10th Cir. 1996). In doing so, we consider "whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.* (internal quotation marks omitted). But where, as here, the defendant did not renew his motion for acquittal at the close of the case, our standard of review is plain error. *United States v. Flanders*, 491 F.3d 1197, 1207–08 (10th Cir. 2007) (citing *United States v. Bowie*, 892 F.2d 1494, 1496–97 (10th Cir. 1990)). Although this standard is "essentially the same as if there had been a timely

motion for acquittal," *Bowie*, 892 F.2d at 1497, our court has emphasized that plain error provides the correct standard. *United States v. Goode*, 483 F.3d 676, 681 n.1 (10th Cir. 2007).

Under plain-error review, the appellant must demonstrate the district court (1) committed error, (2) that was plain, which (3) affects substantial rights. *United States v. Rufai*, 732 F.3d 1175, 1189 (10th Cir. 2013). "If these factors are met, we may exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Story*, 635 F.3d 1241, 1244 (10th Cir. 2011)). Here, the entire record on appeal may be considered because Exom presented his own evidence after his motion for judgment of acquittal was denied, therefore waiving his right to have the appeal concern only the government's case. *United States v. Delgado-Uribe*, 363 F.3d 1077, 1082 (10th Cir. 2004).

Count 1 charged Exom with a violation of 18 U.S.C. § 922(g)(1), which makes it a crime for a felon to possess a firearm or ammunition. "[A] crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive." *United States v. Powell*, 226 F.3d 1181, 1192 n.4 (10th Cir. 2000). Accordingly, we must examine the evidence to determine whether the jury could have found Exom guilty for either possession of a firearm or possession of ammunition. Because we find sufficient evidence to support a jury

finding that Exom possessed the ammunition, we will not address the firearm possession.

A conviction under 18 U.S.C. § 922(g)(1) requires proof beyond a reasonable doubt that (1) the defendant is a convicted felon, (2) the defendant knowingly possessed a firearm or ammunition, and (3) the possession was in or affecting interstate commerce. *See United States v. Colonna*, 360 F.3d 1169, 1178 (10th Cir. 2004). In this case, the parties stipulated to the first and third elements.

The prosecution can prove that a defendant knowingly possessed a firearm or ammunition, the second element, by showing either actual or constructive possession. *United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994). Here, the government sought to show constructive possession, which exists so long as a person "knowingly holds ownership, dominion, or control over the object and the premises where it is found." *Id*. We may simply infer such control when a defendant had exclusive possession over the area in which the object was found. *United States v. Gorman*, 312 F.3d 1159, 1164 (10th Cir. 2002). Here, however, Exom's possession wasn't exclusive; he had a passenger in the Tahoe. To infer constructive possession when there is joint occupancy requires "some connection or nexus between the defendant and the firearm." *Mills*, 29 F.3d at 549. That connection exists where there is "evidence supporting at least a plausible inference that the defendant had *knowledge* of and *access* to the weapon." *United States v. Hien Van Tieu*, 279 F.3d 917, 922 (10th Cir. 2002) (emphasis added) (internal quotation marks omitted); *see Colonna*,

- 9 -

360 F.3d at 1179 ("Under Tenth Circuit precedent, where the defendant in a joint occupancy situation has knowledge of and access to the weapons, there is a sufficient nexus to infer dominion or control."). In this case, there was evidence that Exom had knowledge of and access to the ammunition.

*Access*. The jury could have reasonably inferred that Exom had access to the ammunition because it was readily accessible from the driver's seat, where Exom was sitting before the search. Officer Dawson discovered the handgun magazine under the driver's seat. On this point, our case is like *United States v. Gorman*. There, we concluded that, although Gorman did not have exclusive possession of his truck, a "sufficient nexus between Mr. Gorman and the firearm was established by testimony describing the location of the gun on the driver's side of the vehicle and demonstrating it was visible and retrievable from the driver's seat, where Mr. Gorman was sitting immediately prior to the search." *Gorman*, 312 F.3d at 1164. The same can be said of Exom and his position relative to the ammunition here.

*Knowledge*. The jury could have reasonably inferred Exom's knowledge of the ammunition from his behavior. After the officers activated the lights and sirens on the police car, they saw Exom bend down in his seat, and they saw his head bobbing in a way that indicated to them that he was reaching for something on the floor of the automobile. Based on Exom's earlier movements, Officer Dawson looked under the driver's seat and found the loaded magazine. On this point, our case is like *United States v. Michel*. In that case, we said a jury could infer constructive possession based

- 10 -

in part on the officer's observation that, while he was being pulled over, Michel moved back and forth and reached in the back seat, where the officer eventually found a gun. *United States v. Michel*, 446 F.3d 1122, 1129 (10th Cir. 2006). The evidence of Exom's movements in relation to the ammunition was similarly incriminating.

Based on the evidence of Exom's movements before the traffic stop and his proximity to the ammunition, a reasonable jury could conclude beyond a reasonable doubt that Exom knowingly possessed the ammunition.

## CONCLUSION

Based on the foregoing discussion, we affirm the district court's decision to deny Exom's *Batson* challenge, and we find the government presented sufficient evidence to convict under 18 U.S.C. § 922(g).

ENTERED FOR THE COURT


Gregory A. Phillips
Circuit Judge